*Phelps*, for plaintiff,
*Bates*, for defendant.

RUTLAND,
February,
1829.

## CHAUNCEY LANGDON *vs.* MOSES STRONG and INCREASE RUDD.

That a statute authorizing an administrator, in a certain case, to convey lands to the creditors in payment of their debts, the lands to be appraised, and a deduction made from the appraised value, not exceeding 25 per cent. is constitutional and valid.

So is a statute that authorizes one of two administrators to do the same, the other being in the military service of the *United States.*

Otherwise, if the statute compelled to such a course

That a deed of an administrator need not recite the authority by which it is given. It is sufficient if it refer to it, and the administrator describe himself as such.

That the plaintiff shall not be driven to *chancery*, when the remedy he seeks is pecuniary damages in a personal action, or the premises described in a real action, and he is possessed of proper and sufficient testimony to support his claim in a suit at law.

RUTLAND,
*February,*
. 1829.

Langdon
*vs.*
Strong et al.

This was an action of *ejectment* for a lot of land in *Parkerstown* in this state, which was pending in the county court for *Rutland county*, at the September term, 1827, when it was agreed by the parties that judgment should be rendered for the plaintiff, with stay of execution till a final decision of the Supreme Court upon a case agreed on. Judgment was rendered for the plaintiff accordingly, and the cause removed to this Court for a hearing. The case and the papers referred to are voluminous, but the following statement is sufficient to show the nature of the controversy.

It appears, by the case agreed on, that the land in question belonged to *Jonathan Parker*, late of *Clarendon* deceased, at the time of his decease ; that the plaintiff claimed title to the premises by virtue of a deed of the same from *Eleazer Flagg*, administrator of the estate of said deceased ; and the defendants were in possession of, and claimed, the premises by virtue of deeds from all the heirs of said *Jonathan Parker*, acquired at a later period than the plaintiff's deed from the administrator. Hence it became important to ascertain and decide whether the circumstances of the estate of said deceased were such as to warrant a sale of his real estate by the administrator, and whether his proceedings and sale were regular so as to convey a title. For this purpose, the case referred to the probate records. By these it appears that the said *Eleazer Flagg* and one *Rufus Parker* were appointed administrators of the estate of said deceased, July 26th, 1808, and gave bonds as the law requires ; that they immediately represented said estate to be insolvent, and commissioners were appointed to adjust the claims of the creditors ; that appraisers were also appointed, who, within three months from their appointment, returned an inventory of the estate of said deceased, in which the personal estate was appraised at $6,157 30, and the real estate at $62,979 62—total, $69,136 92 ; that, in the winter following, the commissioners returned a list of the claims by them allowed against the estate, amounting to the sum of $15,170 00; that on the 4th Monday of May, A. D. 1809, an order issued to the administrators, to sell so much of the real estate of said deceased as would raise the sum of $9,574, at private or public sale—that, previous to this, to wit, on the fourth Monday of December, A. D. 1808, the judge of probate assigned to the widow of said deceased $700 worth of personal estate—That, in October, 1809, her dower in the real estate was regularly set out to her—That, in November, 1809, the judge of probate made an order that the administrators pay the full amount of the list of claims within eighteen months from that time—that the administrators appealed from this order to the Supreme Court ; and that

Rutland,
February,
1829.

Langdon
vs.
Strong et al.

in January, 1812, said Supreme Court affirmed said order.

It further appeared by said case, that, prior to October 27, 1812, *Edmund Prior* and *Peter Ludlow*, as surviving assignees of *Stephen* and *Shubal Gorham*, had recovered a large judgment against said administrators, in the circuit court of the United States, for a debt due from said estate, not included in said list of claims —That execution had issued, and the marshal had returned *nulla bona ;* and such further proceedings had intervened that these creditors had obtained execution against the proper goods and chattels of the said *Eleazer Flagg* and *Rufus Parker,* for said debt.

It further appeared that on the said 27th day of October, 1812, the legislature of the state of Vermont passed an act, entitled " an act for the benefit of *Eleazer Flagg* and *Rufus Parker*, administrators to the estate of *Jonathan Parker*, late of *Clarendon*, deceased : the preamble of which is as follows, to wit : " Whereas it appears to this assembly that the estate of the said *Jonathan* consists almost wholly of new lands, which cannot, at this time, be disposed of to pay the debts against said estate, which are to a great amount ; but that said estate will be wholly sacrificed, if the said administrators shall be compelled to sell the same immediately ; and also that the said *Rufus Parker* is now in the military service of the *United States.*" The act then, after some provisions that do not affect this case, proceeds as follows, to wit : " And it is hereby further enacted, that the said *Eleazer Flagg* shall have full power to agree with any or all of the creditors of said estate, to appoint one or more appraisers, who are hereby authorized to appraise the lands, or any of them, which belong to said estate, at their just value : which being done, the said *Eleazer* shall have the power to deduct any sum from said appraisal not exceeding twenty five per cent. at which reduced price, the said *Eleazer* alone, without the said *Rufus,* is hereby empowered and authorized to deed said lands, so appraised as aforesaid, in full discharge and payment of any debts of creditors, who shall agree to receive the same in manner as aforesaid."

The case further shewed, that, after the passing of said act, to wit, Nov. 7, 1812, the said *Langdon* and *Cephas Smith, Jr.* agents and attornies for the said *Prior* and *Ludlow*, entered into a contract in writing with said *Flagg*, to receive lands in payment of their said debt, to be appraised, and the deduction to be made, according to said act ; said *Flagg* to give a good warranty deed to such person as said *Langdon* and *Smith* should direct ; also agreeing upon the men to make the appraisal. On the eleventh day of December, said *Flagg* gave said *Langdon* a deed of five

lots, at a given price, to wit, $1,879 48, and took back a bond from said *Langdon*, securing a future appraisal, and application of the amount on said debt of *Prior* and *Ludlow*, and the conveyance back of the surplus of the land, if any, after paying the said sum. In June following, the appraisal was made, and the land conveyed amounted, upon said appraisal, to a less sum than that named in the contract; so that said *Langdon* was entitled to hold the whole of the land contained in his deed from *Flagg*, in consequence of what was already allowed upon said debt. Said deed from *Flagg* to *Langdon* was recorded December, 12th, 1812.— Afterwards, on the 20th of May, 1824, the judge of probate, the heirs being notified and present, granted an order to the administrators to sell the whole of the real estate of said deceased, subject to the incumbrance of the widow's dower ; and, on the 21st of said May, said *Flagg* and *Parker*, as administrators as aforesaid,for the consideration of $700, conveyed to said *Moses Strong*, defendant, by this description, to wit, all the right, title, interest, claim or demand, in and unto all the real estate of which the said *Jonathan Parker*, deceased, died seized, wheresoever it may lie or be situate, (not heretofore legally disposed of ;) also, that part of the real estate of said deceased of which his widow was endowed. Among the heirs who conveyed, *as heirs*, to said *Strong*, were said *Eleazer Flagg* and his wife, which deed also conveyed some other shares of which said *Flagg* had become the owner.

The deed from *Flagg* to *Langdon* commenced by averring " that the said *Flagg*, of, &c. administrator of the estate of *Jon-* " *athan Parker*, of, &c. deceased, pursuant to an act of the le- " gislature,and for the consideration of the sum of $1,879 48, re- " ceived of *C. Langdon*, &c. conveys the lands described"—and he "covenants for himself, his heirs, &c. that he is well seized,and " has good authority, in his capacity aforesaid, to sell," &c. ; and further "binds himself and heirs to warrant and defend the prem- " ises."

The case showed the further agreement, that all the testimony, recited and referred to therein, was to be considered as objected to in the county court, and the objection overruled ; and that, if the Supreme Court should be of opinion that the plaintiff ought to recover, they were to affirm the judgment of the county court: if otherwise, they were to reverse said judgment,and render judgment for the defendants.

The cause was argued at a former term of this Court, in 1828, by *Marsh* and *Williams*, for the plaintiff, and by *Smith* and *Phelps*, for the defendants ; and again this term, by *Marsh* and *Williams*, for the plaintiff, and *Smith* and *Judge Royce*, for the defendants.

RUTLAND,
*February,*
1829.

Langdon
*vs.*
Strong et al.

Rutland,
February,
1829.

Langdon
vs.
Strong et al.

*Mr. Smith's argument the present term.*—The defendants contend—*First,* That the act empowering *Flagg* to convey the real estate to creditors is unconstitutional, and therefore, the deed, &c. cannot operate as a conveyance under the act, or the order of the probate court : and *second,* the deed was not in pursuance of the authority derived from the act, or the authority derived from the act and the order of the probate court in connection.

The defendants standing in the place of the heirs, it is contended the deed cannot operate as a conveyance under the special act of the legislature.

I. The act, so far as it conferred an authority to convey the real estate, is unconstitutional. The legislature have no constitutional power to pass a special act conferring upon one citizen a privilege not applicable to others in like circumstances—retrospective in its operation, and taking away a vested right, or exercising power belonging to the judiciary. These principles not only grow out of the letter and spirit of the constitution, but are founded in the very nature of our government. They have been thoroughly examined and adopted by the court, and are placed far beyond the need of argument in their support. *Bates* vs. *Kimball,* 2 *Chip. Rep.* 77.—*Ward* vs. *Barnard,* 1 *Aik. Rep.* 121.—*Staniford* vs. *Barry,* 1 *Aik.* 314.—*Dupy* vs. *Wickwire,* 1 *Chip. Rep.* 237.— *Starr* vs. *Robinson,* 1 *Chip. Rep.* 257.

To apply these principles to the case in hand, it is contended, the passage of the act under consideration was making a new and different rule for the settlement of an individual intestate estate. The general laws are suspended, so far as this estate is concerned, and certain privileges are extended to the administrators and creditors not to be enjoyed by other administrators and creditors.

The act was wholly retrospective in its operation. It is made to relate to transactions already past. *Jonathan Parker* was dead, and the act was passed to effect a settlement of his estate.

The effect of the act was to take away vested rights. An individual dying intestate, his real estate, by our general law of descent, becomes vested in his heirs. This is a settled principle, and cannot be disputed.—1 *Aik. Rep.* 94.—1 *Swift Dig.* 444.—4 *Day. Rep.* 214.—If it is wanted for the payment of debts, it may be sold by order of the probate court. Until such order and sale the title is in the heirs, and is acquired by the death of the owner, and not by any subsequent proceedings in the probate court. A division of the real estate among the heirs, in pursuance of an order of the probate court, has only the effect to give the heirs the possession of it, and in severalty. It is, therefore, perfectly obvious the act, so far as it authorized a con-

veyance of the real estate, was an unconstitutional interference with vested rights. In the case *Ward* vs. *Barnard,* the Court say, " A right, by the standing law of the state, was vested in the " creditor, and no especial act of the legislature can take it from " him." And in the cases, *Staniford* vs. *Barry* and *Bates* vs. *Kimball,* language to the same effect is used. By tho standing law of the state the title to the real estate was vested in the heirs, and it cannot be taken away by a special act of the legislature. A title by descent is beyond the controul of special legislative interference, as much as a title by purchase. In the latter case a title by possession, or set off on an execution, accrues by operation of law.

Unless some special reasons can be shown to take the case of a vested right by descent out of the general rule, as adopted by this Court, the act is unconstitutional as destroying vested rights. The plaintiff contends that the real estate, by the act, was to be conveyed to the creditors in payment of their debts ; that the real estate vests in the heirs, subject to the payment of the debts of creditors, and that the act only alters the remedy. To this it is answered :

1. The constitution declares—that every citizen ought to find a certain remedy by having recourse to the laws, &c.; and that he ought to obtain right and justice conformably to the laws. By an order of the probate court, the real estate may be applied in payment of debts. A certain remedy is here provided, and it must be pursued. It is not within the power of the legislature to alter it.—*Ward* vs. *Barnard,* 1 *Aik. Rep.* 128.—As against the creditors, the power contended for could not be exercised, and for the same reason it cannot as against the heirs. The remedy given to the creditors, under the general laws, is in the nature of an adversary proceeding. Notice is required to be given, and other steps taken to protect the rights of the heirs.

2. The act in varying the remedy makes the real estate the primary fund for the payment of debts. The administrator is empowered to pay all the creditors out of the real estate. There was personal estate to a large amount, and it does not appear from the case it had been applied. Besides, it does not appear the probate court, before the passage of the act, had granted licence to sell real estate to a certain amount, and this, with the personal estate, after deducting the widow's share, was more than sufficient to pay all the debts. It was not, therefore, within the power of the probate court to make an order affecting the title of the heirs. Much less could the legislature do it under such circumstances.

3. The heirs may prevent the real estate being taken from them by giving bonds to pay the debts. (*Probate act,* 1797, *sec.* 49.)

If the legislature can deprive the heirs of this right, it can of any other right accruing under the general laws.

4. The creditor is only entitled to his debt out of the real estate ; and by the remedy given in the act, he receives his debt and twenty five per cent. in addition. Could the legislature, by a special act altering the remedy, compel the creditor to take land in payment of his debt, and that too at twenty five per cent. more than its value, or compel the creditor to deduct twenty-five per cent. from his debts?

5. By the bond of administration the administrators became bound with sureties to administer according to law. The moment the bond was executed, the heirs became interested in it, and had a right to resort to it in case of maladministration. The remedy prescribed in the act authorizes one of the administrators to finish the settlement of the estate, so far as the claims of creditors are concerned. The heirs, in case of maladministration, would have no remedy on the bond, and must rely wholly upon the personal responsibility of the administrator authorize d to act. The other administrator and sureties would not be liable. In addition to this, the heirs could not call the administrators to account before the probate court. The legislature had taken the business into their own hands, and the administrator stood accountable to the legislature, or the other courts. Thus, it is contended, the legislature could not alter the remedy, and that, in so doing, the heirs were deprived of several valuable rights vested under the general laws.

The act was in violation of the rights of *Rufus Parker*, the other administrator. It was taking from him the right of administration. The act also enabled the administrator to prefer one creditor to another.

The plaintiff also contends—That in certain cases of necessity, a special act conferring a mere naked authority, or a benefit to the individual interested, is not exceptionable as taking away vested rights, and that the case before the Court is a case of this description. To this it is answered :

1. The argument, *ex necessitate*, has been examined by this Court and rejected, so far, at least, as is applicable to the case under consideration. The argument is founded in a supposed ignorance or incapacity in the legislature to foresee, and provide for, all the individual cases. The principle established is, that the legislature cannot by implication derive authority to take away vested rights, on account of the " narrowness or paucity of the laws," upon a subject in relation to which general laws have been passed. Now this is precisely the case before the Court, if any necessity existed, which is not admitted.

RUTLAND,
February,
1829.

Langdon
vs.
Strong et al.

2. The additional circumstance, that the act confers a mere naked authority not coupled with an interest, is the strangest rule ever contended for to test the constitutionality of an act of the legislature. The cases referred to, in illustration of the principle, are, where a sheriff or collector dies after the commencement and before the completion of an official duty in relation to the right of property. The general laws provide for these cases by the appointment of a new sheriff or collector; and if the business cannot be resumed where left (the rule here applies) the legislature must provide for it by general laws. This has, been done in relation to the collector, (*stat.* 1828, *p* 8.) The . fact stated in the act that *Rufus Parker* was in the military service (it is only necessary to observe in this part of the case) may be disposed of in the same way. Besides, the cases are not similar, and the one does not determine the other.

3. That an act confers a benefit has nothing to do with the question whether it is, or is not, constitutional. The case of the infant or lunatick, referred to by the plaintiff's counsel, is at least of a very doubtful character. The case decided in *Massachusetts*, *Rice* vs. *Parkman*, (16 *Mass. Rep.* 326) is a glaring instance of judicial ingenuity to confer upon the legislature of that state power not clearly delegated in the constitution.

4. To make the exception contended for would prostrate the rules established by the Court to test a legislative act. How is the fact that the act was necessary and beneficial to be ascertained? Is the act itself conclusive? If so, the right of property is within the controul of the legislature, and the rules, so far as they relate to vested rights, are rendered useless. If the act is not conclusive, then there is a question of fact to be settled—was, or was not, the act necessary and beneficial? This, of course, would be tried by a court and jury, as a mixed question of law and fact. The result would be, the legislature would have an absolute controul over the right of property, or a discretionary power, and that discretion too subject to trial by court and jury. A principle so absurd ought not to have, cannot have, the sanction of this Court.

If the legislature have the power of conferring upon individuals exclusive rights and privileges, it must be confined to three classes of cases. 1. When the state is sole owner of the right, as an act authorizing the treasurer to deed lands, granting money, or remitting debts belonging to the state. 2. Where the individual, on whom the right is conferred, is solely interested in the right, as an act altering names, restoring to legal privileges, or authorizing aliens, societies and corporations to purchase and hold lands. 3. Where the individual and the whole community are jointly interested in the right; and here, by an express provision in the

FF

Rutland,
February,
1829.
—————
Langdon
vs.
Strong et al.
constitution, the rights of individuals must yield. Such as roads, bridges, ferries, wharves, and taxes on towns and counties.

The act, in giving license to convey the real estate, possesses another feature which renders it equally exceptionable. It was not only taking the title from the heirs, and giving it to another, but it was giving it in payment of a debt, without a hearing. It was settling a claim or demand between party and party. It was the exercise of power belonging to the judiciary ; and let it be remembered, no exception can here be made on the ground of necessity. An express provision in the constitution, as decided by this court, forbids it : this too will clearly distinguish the case before the court from that of the infant or lunatick.

[*Mr. Smith* here argued at length to show that the powers belonging to the probate court are judicial, and that the act in question was the exercise of probate powers—That it was also exercising powers belonging to the other courts, and that whatever is constitutionally within the province of the courts is not constitutionally within the province of the legislature.]

II. The case thus far has been examined as to what took place between the legislature and administrator ; and we are now to examine the proceedings of the administrator and plaintiff, under the act. Going upon the ground of a supposed authority conferred by the legislature to convey the real estate, it will be found the title of the heirs is not in the plaintiff.

1. From the deed itself it does not appear the pretended authority was pursued, or even attempted to be executed. The deed, according to its common and legal import, is the individual deed of the grantor, and not a conveyance under the authority. In examining the deed by itself, the Court, it is believed, must come to such a conclusion. The grantor signs and seals the deed with his individual name and seal—covenants with the grantee he is seized of the premises, and will warrant and defend them against all claims & demands. The lands are not described as a part of the estate of *Jonathan Parker*, but are conveyed as the estate of the grantor. The expression in the fore part of the deed, " in pursuance of an act of the legislature", &c. not specifying what it related to, or for what purpose it was passed, must be construed to have reference to the grantor or grantee. Taking the whole deed together, this would be the conclusion of every mind, without hunting over the several acts of the legislature. The addition of administrator to the name of the grantor is to be regarded as *descriptio personæ*.— 1 *Swift's Dig.* 330.—6 *East*, 110.—1 *Wash. Rep.* 199.—9 *Johns. Rep.* 335.

RUTLAND,
February,
1829.

Langdon
vs.
Strong et al.

The deed cannot be aided by a production of the act, accompanied with the averment of the grantee that the premises belonged to the estate of *Jonathan Parker*, and that the deed was executed under the authority. It is a general principle in the case of bills and promissory notes, where a person acts as agent for another, the character in which he acts must appear on the face of the obligation, or the act is the act of the agent, and not the act of the principal.—*Ham. Par.* 59–33,—*Stackpole* vs. *Arnold*, 11 *Mass. Rep.* 27.

If a person has power by virtue of a letter of attorney to convey lands, he must do it in the name and style of the principal, and not in his own name. By the letter of attorney he acquires no title to the lands to be conveyed ; and if it appear on the face of the deed no title but his own was contemplated, the deed is inoperative. The principle has long been settled that if the authority fully appears on the face of the deed, and the attorney acts in his own name, the deed is void, and it must be clearly so, if there is no appearance of acting in pursuance of the authority. *Combs' case,* 9 *Co.* 76.—*Wilks* vs. *Buck,* 2 *East,* 142.—*Frontin* vs. *Small,* 2 *Stra.* 705.—*Elwell* vs. *Shaw,* 16 *Mass. Rep.* 42.—4 *Bac. Abr.* 140, *Leases and Terms for years,* I, 8. I, 10.—1 *Swift's Dig.* 320. In the case *Parker* vs. *Kett,* 1 *Ld. Raym.* 658, there is a dictum that an attorney may act in his own name without reciting his authority. The expression is made in reference to acts in parole, and cannot be applied to the execution of deeds. *Comb's* case has never been shaken at common law. The principle must be the same, whether the authority is derived from individuals or the law. In the latter case, the authority gives no interest or estate in the lands. If the deed on its face conveys only the title of the signer, it must be equally inoperative. It is not claimed the authority must be formally recited at full length, or that the individual authorized cannot act in his own name. The principle contended for is, that the plaintiff's deed should have described the lands as belonging to the estate of *Jonathan Parker*, with proper covenants. The authority ought to appear distinctly on the face of the deed, and it might be added, (though not necessary) it ought there to appear the act done is warranted by the authority. It is true, the plaintiff has brought before the court an act of a similar date with the one mentioned in the deed; but we have nothing to show us the deed was given in pursuance of the authority but the *ipse dictum* of the grantee, and that too, when the grantor, on the very face of the deed, negates the acting under the authority, by acting in his own right, and alleging the title to be in himself. We cite as directly in point, *Fowler* vs. *Shearer,* 7 *Mass. Rep.* 14.—

Rutland,
February,
1829.

Langdon
vs.
Strong et al.

*Griswold* vs. *Bigelow*, 6 *Con. Rep.* 258.—As to the forms of conveyance in the case of executors and administrators, see 2 *Swift's Dig.* 789—790.

Evidence *aliunde* is not admissible to vary or add to the terms of the deed. To allow the plaintiff's deed to operate by the collateral aid referred to, would have that effect.—1 *Phil. Ev.* 424.—3 *Stark. Ev.* 1002.

The premises are conveyed as the estate of the grantor, and the averment made is, that they were not so conveyed, but under the authority. The grantor covenants he is well seized, &c., and the averment made is, that he was not so seized, but the premises belong to *Jonathan Parker's* estate. The common law is very explicit that a deed shall be construed, and take effect, according to the plain import of the terms of it. To give effect to the deed in the way proposed would make that pass without deed which the common law appoints shall pass only by deed.—The statute, having in view the same object, prescribes that a deed shall be in writing, with certain other formalities. Where a statute, for reasons of policy, requires written evidence, to admit oral testimony in its place would be to subvert the statute itself. In such case written evidence can never be superseded in whole or part by parol evidence. Under the statute of frauds, a promise to pay the debt of another, without specifying the consideration, has been held insufficient.—2 *Stark.* 602.—*Waine* vs. *Warlter*, 5 *East.* 10.—*Saunders* vs. *Wakefield*, 4 *Bar.* and *Ald.* 595.—In reference to a deed, the rule is necessarily more strict on account of the greater importance of the instrument. The letter and spirit of the statute and common law, in prescribing that a deed shall be in writing, are, the facts must there appear necessary to give it efficacy. Where is the fact that the proceeding in question was under the authority? Where is the fact to show a stranger the least intent to pursue the authority? Where is the fact that the premises belonged to the estate of *Jonathan Parker*? Where is the fact that the premises were appraised? Are these facts all to rest in the "slippery memory" of man, or in a few scraps of paper, to which the deed has no visible reference, subject to be secreted or varied as interest may require? Can the plaintiff by a production of the act call upon the court to insert in the deed the relation of the act to the estate of *Jonathan Parker*? that the premises belonged to that estate? that the premises were appraised? and then, with a dash of the pen, to strike out the covenants of seizin and warranty, and introduce new covenants showing title in *Jonathan Parker's* estate?

2. If it were admitted the plaintiff's deed is *prima facie* ef-

RUTLAND,
February,
1829.

Langdon
vs.
Strong et al.

fectual on the face of it to convey the title of the heirs, there still would be an insuperable difficulty in the way of his recovering. The act directs the lands to be *appraised at their just value* by men agreed upon between the administrator and creditor, "which being done," (is the language of the act) the administrator is empowered to give a deed, making a deduction of twenty-five per cent. The course pursued was, after making an agreement appointing appraisers, a deed in the first instance, without an appraisal, then a bond from the plaintiff to the administrator to redeed to him in his individual capacity the overplus, after appraisal to be had at some future day.—The legislature had placed the administrator beyond the reach of the courts, and it would seem, on the very stating of the proceedings, that he and the plaintiff are throwing aside the act, treating the estate as their own, and making a division. The question is whether this course of proceeding is a legal pursuance of the authority. It is a general principle that an authority must be strictly pursued, and a departure from it, in any material circumstance, will render the act done void. The principle will only be examined in reference to the transfer of the title to real estate.

1. The proceeding was a departure from the mode prescribed. The general law, as has been noticed, prescribes a mode of conveyance to the owner, and it must be strictly pursued. In that case a seal, although it may seem an unmeaning ceremony, is nevertheless an essential requisite. The owner may convey his lands reserving a power, and feeling conscious of weakness, or to prevent carelessness and imposition, may prescribe a form to himself. The owner may also delegate an authority to a third person to convey his lands, guarded by certain forms and ceremonies. In both cases the form must be strictly observed, for that is the intention of the individual from whom the power emanates. The maxim here applies *modus et conventio vincunt legem.*—4 *Cruise Dig.* 230.—*Digges' case*, 1 *Rep.* 173.—*Downer* vs. *Thurland*, 2 *P. Wms* .506.—*Hawkins* vs. *Kemp*, 3 *East*, 410.—*Darlington* vs. *Puttney, Cowp.* 260.—*Wright* vs. *Wakefield*, 4 *Taunt.* 213.—*Rattle* vs. *Popham*, 2 *Stra.* 992.

2. The act is very explicit that the lands should be appraised before the deed is given. In this particular it was penned with an unusual degree of caution. If such authority can be executed in such manner, it may, where given by the general law, and the executor, administrator, collector, and sheriff, may adopt a similar course of proceeding. A principle leading to such a result cannot be admitted. An appraisal was a condition precedent to the conveyance. The deed being given without such appraisal,

Rutland,
February,
1829.

Langdon
vs.
Strong et al.

is void, and a subsequent appraisal will not cure it. In the case of an authority delegated by an individual requiring the consent, approbation, or judgment, of three persons, the rule is strict, and an execution of the authority, without such consent, approbation and judgment, is of no effect. The defect cannot be cured but by a new execution of the authority and *in toto.*—4 *Cruise's Dig.* 233.—*Hawkinson* vs. *Kemp,* and *Wright* vs. *Wakefield,ut supra.* Lease and power of attorney to make livery from a given day, and it is made on a subsequent day ; or on condition, and it is made absolutely in both cases, the livery is void.—1 *Bac. Abr.* 317, 318, *Authority, C.*—3 *Bac. Abr.* 166, 167, *Feoffment, E.*

The remaining question will be disposed of in very few words. It is contended that if the legislature had not power to authorize a conveyance, they had power to authorive one administrator to give a deed alone, and this deed is good under an order of the probate court. The order referred to is the order of 1809, granting license to both administrators to sell at private sale, or public auction, so much land as would raise nine thousand five hundred dollars. The principle is settled that in the execution of an authority or trust of this nature, all the persons appointed must join in the execution of their powers. It is an additional security against mistakes and frauds, and the exercise of judgment is required. *Townsend* vs. *Grey,* 1 *Chip. Rep.* 127.—1 *Bac. Abr.* 319, *Authority, C.*—1 *Bos. & Pull.* 229.—8 *Term,* 454. —2 *East,* 244.—In reference to the probate order, the argument on the part of the plaintiff admits this principle, and further, that in this instance an individual, acting under the law, cannot alter the law. Resort is therefore had to the special act of the legislature. To show the application of the argument to this part of the case, it will be only observed,

1. Where administration is committed to two or more, and one dies, removes out of the state, neglects or refuses to act, the judge of probate can order or empower the acting administrator to perform all the acts appertaining to the office. *Probate act,* 1797, *sec.* 40.—Until such an order, the administrator has a right in the administration, and the heir a right to his judgment, and the enjoyment of the real estate. How does the act in the particular now under consideration vary the question ? Can the legislature have the power in the one case and not in the other ?

2. The order does not and could not give power to make a deduction from the real value of the lands. Resort must here be had to the act, upon the principle the legislature may take away a part of a vested right—may exercise a part of a judicial power, or to the principle that an individual acting under the law can alter the law.

3. The act has no relation to the order of the probate court. One of the principles adopted in the construction of statutes is, to suppose the law maker present, and ask the question, did you intend to comprehend this case ? Did you intend to authorize the administrator to give a deed under the order of the probate court ? 6 *Bac. Abr.* 386.—*Statutes* I, 6.

RUTLAND,
*February,*
1829.

Langdon
*vs.*
Strong et al.

The proceedings had not the least reference to the order, and this the whole case shows conclusively. A non-execution of a power, that is, where nothing is done in relation to the power, cannot be supplied in any court. 1 *Mad. Ch.* 55, *Tollett* vs. *Tollett.*—2 *P. Wms.* 490. The order of the probate court was a boon which the plaintiff might have enjoyed in connexion with other creditors, and which might have been executed at his request under the general law. By seeking special legislative favors not common to all, he has wholly lost the benefit of it, and cannot complain. Special legislation his claim of title points to, and special legislation, if any, must be its shield. The deed, therefore, cannot either operate as a conveyance of the title to the premises under the act, or the order of the probate court. This, it is supposed, must end the case. How the title would be viewed in equity, we are not here put upon the inquiry. The plaintiff has brought his action at law, and at law he must stand or fall. It is believed the plaintiff will be troubled to find a precedent in chancery to cure the proceedings under the act, and then to give validity to the act itself.

*Williams, contra.*—The plaintiff contends, 1. That the act of October, 1812, was rendered necessary by the peculiar situation of the estate of *Parker,* in consequence of the judgment of the circuit court and the decree of the court of probate.

2. That it was clearly within the constitutional power of the legislature to pass such act, and that the act has been substantially pursued.

3. That the defendant, *Strong,* is not at liberty to contest the validity of the deed to plaintiff.

I. The first position will appear from the following considerations.

1. The judgment of the circuit court, in Oct. 1810, treats the estate as a solvent estate. The representation of the insolvency not having been shewn to the court, judgment was rendered against the estate of the intestate. This judgment created a *lien* on all the real estate of *Parker,* at the time of his decease, which could not be divested by any conveyance, either of the heirs or administrators. This dictum is fully recognised in 3 *Mass. Rep.* 523, *Gore* vs. *Brazier.*—7 *Wheat. Rep.* 90, *Record* vs. *Williams.*

RUTLAND,
February,
1829.

Langdon
vs.
Strong et al.

2. The order of judgment affirmed in February, 1812, and also the judgment of the circuit court, subjected the person and property of the administrator to be taken for the debts of *Parker*.

3. While the *lien* abovementioned existed, the administrators, if they were both present and acting, could make no sale or conveyance to raise money for the payment of the debts to redeem themselves from imprisonment; and it was at least doubtful whether the court of probate could have authorized *Flagg*, the other administrator, to proceed alone. (*Old probate act, sec.* 40, *compared with sec.* 37.) And if the court of probate could have so authorised *Flagg*, it could not have been more beneficial to the estate than the course directed by the act; inasmuch as the act contained a restriction upon the power which administrators usually have by an order of sale.

II. But, upon the second point it is contended that the act in question was within the constitutional power of the legislature to pass.

The legislative power is the sovereign power. All legal and political writers agree in this definition of the legislative power. It may, as in the *United States*, be restrained by a written constitution; but whatever it enacts is the law of the land, unless it violate the provisions of the constitution.—1 *Black. Com.* 46, 47.— 4 *Dall.* 19,—3 *Dall.* 398.—Among the enumerated powers of parliament we find in 5 *Comyn's Digest*, 285, the following:— " Parliament may enable a sale or settlement of lands not practicable by the rules of law, as it may enable an infant to make a sale for the discharge of debts, &c. So it may enable a lunatic to make a sale, lease," &c. It may (because it always has, without being questioned,) vary the mode in which a remedy may be pursued. Actions, which at one time are to be prosecuted before one jurisdiction, may, at another, have to be pursued before another tribunal. Property may at one time be liable to execution, and at another time not. (*See various acts exempting property from execution.*) It may, at one time, be directed to be taken at an appraised value; at another, by sale at public auction. And the remedy by imprisonment may be entirely abolished.— 2 *Kent's Com.* 326.—*Sturges* vs. *Crowninshield,* 4 *Wheat.* 122. —1 *Kent. Com.* 394.—Laws also may be retrospective; and every act of parliament is so.—1 *Plowden,* 79,—1 *Kent,* 427.—4 *Con.* 209, *Goshen* vs. *Stonington.*—In the known distinction between public and private statutes, we find that laws may be passed which act only on individuals.—1 *Kent,* 429–30. It will be found that the right of the legislature to pass private acts or statutes has never been questioned, although different rules may be

RUTLAND,
February,
1829.

Langdon
vs.
Strong et al.

observed in relation to their construction, and the manner of taking notice or advantage of them, and their effect when passed.—2 *Black. Com.* 344.—3 *Wilson's Works.*—*Jefferson's Notes*, 174. —8 *John.* 406, *Catlin* vs. *Jackson.*—12 *Wheat.* 378, 382, *Mason* vs. *Hale.*—12 *Wheat.* 128, *Williams* vs. *Norrice.*—We believe, then, it may be safely affirmed that, whenever the legislature, or sovereign power, in any acts, attempt to regulate the conduct of its citizens by laws operating upon the whole or part, and whenever they prescribe rules to govern the conduct of the citizens in general, of particular bodies, or of individuals, it is in the legitimate exercise of legislative power, and their acts, or the rules by them prescribed, cease to be laws, only when they violate the fundamental laws or the written constitution, where there is one.

Trying the act in question by these principles, it will be found that the real estate of every person deceased, as well as his personal estate, is chargeable with his debts; *(old probate act, sec. 30)* that the administrators may be authorized to make sale of the real estate; *(sec. 54, 49)* that they are accountable for the personal estate at the inventory, unless they obtain leave to sell the same at public auction; *(sec. 47)* but that they are unrestricted in disposing of the real estate, except by the oath prescribed in the 49th sect.—2 *P. Wms.* 148, *Ewer* vs. *Corbet.*—1 *Atkins*, 463.

The administrators, by the order of sale of May, 1809, could have disposed of the real estate of the deceased for such price as they thought proper. The act in question enabled one of the administrators to make the conveyance, restraining him to sell only for the payment of debts, and extending his discretionary power to sell at no greater discount from the appraised value than 25 per cent.; and it is apprehended that either a general act authorizing a similar proceeding in all cases, or a private act authorizing it in a particular case, would be valid.

Laws of a similar import not only have always been passed by the legislature of this and other states, but have been expressly recognized to be valid.—8 *Mass. Rep.* 468, *Walter* vs. *Bacon et al.*—9 *Mass. Rep.* 151, *Patterson* vs. *Philbrook.*—*Id.* 361, *Locke* vs. *Dane.*—2 *John. Ch. Rep.* 172, *Mann* vs. *Sugdane.* —16 *Mass.* 326.

It is also believed from the observations already made, that this is clearly a legislative act. It cannot be a judicial act. The clause in the constitution declaring that the legislative, executive, and judiciary departments shall be separate, &c. *(chap. 2, sec. 6)* obviously refers to the judicial power which is exercised in the ordinary courts of common law, in controversies between man and man,

Rutland,
February,
1829.

Langdon
*vs.*
Strong et al.

and the government and the individual. By courts of justice and the judicial power, are usually intended tribunals established to determine disputes between citizens, and the power of delivering the law arising in those disputes, applicable to the cases.—*Vattel*, 136, 163.—1 *Adams' defence of the American Constitutions*, 153.—The settlement of estates, it is apprehended, is no part of the judicial power. The collecting and distributing of estates in *England* originally belonged to the king.—2 *Kent*, 332.—It was then transferred to the papal clergy who abused the trust: it is now exercised by the bishop or arch bishop in the courts ecclesiastical. In this country it is exercised by tribunals called, in some states, *surrogates ;* in others, orphan courts; and in others, probate courts ; and though in this state the courts of common law have, by statute, an appellate jurisdiction of questions in relation to the settlement of estates, yet it is apprehended that this does not make those courts a part of the judiciary department.

But it is further contended, that the power to authorize administrators to make sale of the real estate of their intestate is in no way a judicial power. It is not always exercised by the courts which are intrusted with the regulation and settlement of estates. In some states it is exercised by the court of common pleas, and in some it is not permitted. In *England* the administrators have nothing to do with the real estate ; it descends to the heirs, and comes with a personal liability on the heirs for the specialty debts, &c. And further, the power which is contended for in this case is not one which has been delegated to the probate courts : but this act makes provision in a case not foreseen, and where, unless they have the power, both the creditors, and the administrators, and their bondsmen, would have been greatly injured.

The next inquiry will be whether it impairs or affects the rights of any others ? Here it may be observed, that if the legislature have the constitutional power to pass such an act, no person can have any right in derogation of this power. The acts or laws of legislatures, both general and private, do frequently affect or impair the rights of others. Instance, the laws changing the remedy, altering the jurisdiction of courts, &c. ; and it is not readily seen that there is any difference in this respect between public and private acts. Did this act in any way impair or affect the rights of any others ?

1. It affected no rights of the creditors : their remedy (except *Prior* and *Ludlow*) was against the administrators and their bonds, because the order of payment was not complied with.

2. It affects no rights of the heirs. They have no claim until

RUTLAND,
February,
1829.

Langdon
vs.
Strong et al.

the debts are paid ; and then only to the surplus after payment of debts.   And from the different orders of sale to which the heirs have consented, and more especially from the last order, and the proceedings under it, including the deed from the administrators to *Strong*, the defendant, of the 21st May, 1824, the whole estate was disposed of for the payment of debts, and nothing left for the heirs ;  *Strong*, the defendant, at that time representing all the heirs, and being the purchaser, and consenting to the order.   But if it were otherwise, it is apprehended the heirs can have no other remedy except upon the administrators' bond.

3.   Did it affect the rights of  *Rufus Parker*, the other administrator ?   1.   As administrator, he had no interest in the real estate :  he had simply an authority to dispose of it, subject to the *lien* of *Prior* and *Ludlow*.   2.   By his own act he had placed himself under a temporary incapacity to perform the duties of administrator.   3.   By his deed to *Flagg* and *Parker* he had conveyed to them all his right to the estate, and of, course, could not be considered as a stranger to the act of 1812.    4.   He does not contest the validity of the act, but must be considered as acquiescing therein ; and it appears to have been made for his benefit.—12 J n. 122.—*Co. Lit.* 19, *b.*

Another question may arise, whether the act has been substantially complied with ?   It is believed that the construction of this or any other act, which is to transfer an estate, for a full equivalent in value, should be favorable to the grantee.   A full consideration has been paid, and that has gone for the benefit of the estate.  The intentions of the legislature (which must always be regarded in the construction of statutes, (1  *Kent's Com.* 437) were to enable *Flagg* to convey lands in satisfaction of the debts, at a discount of 25 per cent. from their appraised value.   Great care seems to have been taken to comply with this condition.   The stipulation in the agreement that the lands should be received on the judgment against them—the deed specifying that the conveyance was to the plaintiff as agent for  *Prior* and  *Ludlow*—the bond executed at the same time by plaintiff, and the after appraisal, by which it will appear that there was no excess, but, on the contrary, enough to pay the executions.   The act, then, was pursued in every essential particular.

III   Can the defendant, *Strong*, contest the validity of this conveyance ?  It may be questioned whether his deed from the administrators, executed in May, 1824, was a valid deed; & we deny that administrators, as such, can make such a general sale and conveyance.—13 *John. Rep.* 97, *Jackson* vs. *Rosevelt et al.*—*Id.* 537, *Jackson* vs. *Delancey.*—But if the deed can be considered

Rutland,
February,
1829.

Langdon
vs.
Strong et al.

as valid, it will be contended that the land in question was not conveyed to him by that deed, but was embraced in the exception in the description of the premises, " not heretofore legally disposed of." *Flagg*, by his deed to plaintiff, and by the covenants, would be estopped from denying his authority; and can his grantee, *Strong*, have any greater rights than *Flagg* himself had?—4 *Comyn*, 194.—5 *Day*, 88, *Coe* vs. *Talcott*.—Further, the exception must be considered as embracing all that part of the estate which had been conveyed by deeds purporting to be in pursuance of authority. The words "legally disposed of" must be considered the same as conveyed or deeded, *bona fide*, for the payment of debts, whether the conveyances were defective or not. Further, *Strong*, the defendant, having purchased the shares of all the heirs, which comprised the surplus after the payment of debts, and purchasing of the administrators the whole estate of *Parker*, excepting the land in question, if the above position is correct, must be considered as assenting to, and acquiescing in, all the conveyances which had previously been made, and, as the plaintiff contends, is estopped from denying their authority to convey.

But if this is not correct, it will be seen that *Flagg*, in his deed to the plaintiff, conveys directly to him, as attorney for *Prior* and *Ludlow*, the lands in question, and covenants that he is well seized, and that he had lawful authority to bargain and sell the same in manner and form, and according to warranty, &c. This was a personal covenant, and estopped him from denying the title of the plaintiff, or his *(Flagg's)* authority to sell.—*Co. Lit.* 47, 6.—12 *John. Rep.* 204, *Jackson* vs. *Bull*.—1 *Johns. Cases*, 90.—12 *Johns.* 357, *Springston* vs. *Schermerhorn*.—13 *Johns.* 316, *Jackson ex dem. E. Stevens* vs. *F. Stevens*.—14 *John.* 224, *Jackson ex dem. Brooks* vs. *Ayres*.—4 *Comyn, title Estoppel*.—It is believed there is but one exception to this rule, viz. in the case of trustees under a public act, and then the court are bound to recognize their want of authority. It will be found that an estoppel binds not only the parties but privies; all who claim under the persons making the conveyance.—1 *Salk.* 276, *Trevivan*, vs. *Lawrance et al.*—6 *Mod.* 256, *S. C.*—And, indeed, if this was not so, the effect of it would always be that the deed would be avoided by a subsequent conveyance. A case, it is believed, precisely similar, has been decided in *Connecticut*.—5 *Day's Rep.* 88, *Coe* vs. *Talcott*.

Further, *Strong's* possession, which is under one of his titles, does not authorize him to question the validity of plaintiff's title, as their titles were both derived from the same source.

Another point may be made in this case. The debt of *Prior* and

RUTLAND,
*February,*
1829.

Langdon
*vs.*
Strong et al.

*Ludlow* has not been paid, except by the conveyance to the plaintiff. If either the administrators or the heirs questioned either the legality or the propriety of the proceedings under the act, ought they not first either to have paid or tendered the amount of the debt? They not doing this, for so long a time, it must be presumed that every previous step was taken to make the conveyance valid, and that both the heirs and administrators have acquiesced in the same.

*Mr. Williams* was followed by *Mr. Marsh* on the same side, and both were replied to by *S. Royce, jr.* but on account of the unusual length of this case the arguments of the two latter gentlemen are omitted.

The opinion of the Court was delivered by

HUTCHINSON, J. This cause was removed here from the county court after a judgment for the plaintiff, and it comes up to be decided upon the question of title exhibited in the case agreed to by the parties: it being agreed that the defendants are in possession. This cause was ably argued before this Court at their last term in this county, and has again been ably argued at the present term. The majority of the Court are now agreed in opinion; and, in justice to ourselves, I ought to say, we were equally agreed at the last term.

The plaintiff claims title to the premises by virtue of a deed of the same from *Eleazer Flagg*, one of the administrators of the estate of *Jonathan Parker*, deceased. And the defendant *Strong*, claims title to the same premises by virtue of sundry deeds from the heirs of said *Parker*, comprising the title of all of said heirs; and also a deed executed in the year 1824 from the said *Flagg* and *Rufus Parker*, administrators of said estate: the said *Rudd*, the other defendant, being in as tenant to said *Strong*. So that both parties, by claiming under *Jonathan Parker*, deceased, have acknowledged his title to be good. Moreover, the case expressly states that the premises formed a part of the real estate of said deceased. The question then is, which of the contending parties derives to himself that title?

It is manifest, from the case agreed on, and the references therein made to the probate proceedings, that it was necessary to sell the real estate of the deceased to a much greater amount than the sale to the plaintiff, in order to pay the debts due from the estate. For, aside from the debt of *Prior* and *Ludlow*, sued in the circuit court, the list of claims returned amounted to $15,170; and the inventory of the personal estate amounted only to $6,157,-30; and of this the judge assigned to the widow $700. The

RUTLAND,
*February,*
1829.

Langdon
*vs.*
Strong et al.

judge of probate, seeing this deficiency of the personal estate to pay the debts, on the 4th of May, 1809, issued an order to the administrators to sell, at public auction or private sale, so much of the real estate as would raise the sum of $9,574. It does not appear that any sale was made by the administrators, prior to the date of the deed from *Flagg* to the plaintiff: we may, therefore, consider it certain, that the debts due the creditors formed an incumbrance on the real estate of the deceased, at the date of that deed ; and that it was then the duty of the administrators to hasten their proceedings, and make sale of the same by proper conveyances, and pay the outstanding debts. Upon this state of things, the heirs of said *Parker*, under whom the defendants claim, had never any title to the estate, except to what should remain after paying the debts. A vested remainder, is the strongest expression in their favor at all descriptive of their title.

Again, there appears in the case and upon the argument, no controversy but that the plaintiff did purchase of *Flagg*, and take a deed of some sort, and pay or secure the amount contracted to be paid ; so that the estate, and, through it, the heirs have been benefited by the sale to that amount. Nor is it denied that the notices of the proceedings, and deed of the plaintiff, were so of record as to bar the defendants, who claim by later conveyances, from any greater or better right than the heirs themselves might have.

Here the controversy is little else than this, whether the plaintiff can recover at law, or must resort to a court of equity for relief. Upon this point we differ in opinion ; the chief justice considering the plaintiff's only remedy to be before this Court upon the chancery side. I think I may say we discover nothing but that if the same facts appeared in a suit in chancery that are placed before the court in this action at law, we might be agreed in granting relief to the plaintiff, unless we should find ourselves perplexed with the objection that his remedy was complete at law. It is generally true that a man need not resort to chancery when his proof is ample at law, and the remedy he seeks such as the courts of law can afford : as pecuniary damages in a personal action, or the estate sued for in a real action. If the plaintiff should fail in this action, through the irregularity of the proceedings of the administrator, *Flagg*, or the deficiency of his deed, he might be compelled to resort to the equity side of the court for a decree of a conveyance from the heirs, and those claiming under them with notice, or a restoration of the consideration money paid, with interest upon the same.

Three objections are urged to the validity of the plaintiff's deed from *Flagg*,

RUTLAND,
February,
1829.

Langdon
*vs.*
Strong et al.

1. Its deficiency upon the face of it. 2. That the statute refered to in said deed is unconstitutional and void, and affords no support to the deed. 3. If the statute were valid, the proceedings do not conform to it; which also renders the deed void.

With regard to the deficiency of the deed upon the face of it, the objections seem to be that it does not appear by the deed that the land conveyed belonged to the estate of *Jonathan Parker*, deceased ; that it does not show by what authority *Flagg* conveyed ; that he conveyed in his own right ; and that the deed is contradictory, some parts purporting to be the act of the administrator, and some the act of the individual. Recurring to the deed, we find it commences in due form for an administrator's deed. He describes himself as administrator of the estate of said *Jonathan Parker*, deceased ; and, towards the close, he covenants that he, in his said capacity, had good right so to sell. The land is described by the numbers of the lots. After all this, there was no need of any further description showing it to be the land of the deceased. Indeed, the covenant above alluded to amounts to an affirmation, and even to a covenant, that the lands described belonged to the deceased. We need not decide whether any of the covenants are so expressed as to bind *Flagg* in his private capacity : for if it be so, that will make no difference about its conveying the right of *Jonathan Parker*, in the land described. Hence there is no contradiction from that source. The deed recites that *Flagg*, as administrator, &c. and by virtue of a certain statute &c. conveys. Now the defendants urge that here is not sufficient reference in the deed to the authority by which it is given : and several authorities are produced to this point by both parties. The case of *Clapp, Administrator*, vs. *Beardsley*, cited from 1 *Aiken's Rep.* 168, decides nothing about what must appear in the deed, but decides that the necessity of a sale of real estate to pay debts, must appear from the probate records, or in some way, in order to render the conveyance valid. The case in 7 *Mass. Rep. Fowler* vs. *Shearer*, merely decides that the deed of a *feme covert*, reciting that she executed it as well for herself as attorney to her husband, and, in every other respect, appeared to be her own deed, the covenants hers, and signed with her name only, was void, and formed no consideration for a note given for the purchase money. In 8 *Com. Dig. Day's edition*, page 862, it is expressly laid down, that it is not necessary to refer to the power in the deed, if the party has, and can show, power to warrant the deed. The references to support this are, 2 *Sch.* & *Lef.* 464—1 *Ball* & *Beatty*, 92, and 44.—The plaintiff's counsel also cite 1 *Swift's Digest*, 230, to the same point ;

RUTLAND,
February,
1829.

Langdon
vs.
Strong et al.

also, the 16th of *Mass. Rep.* 186, *Robert* vs. *Whiting*, where it is decided that when a conveyance, to be valid, needs the consent of A, that consent may be proved by parol. The deed in question being drawn as above observed, and the case showing that the land described in the deed was in fact a part of the estate of the deceased, we have come to a decision which we deem the result of sound reason and of the above authorities, that the deed is sufficient upon the face of it, if *Flagg* had power to convey said premises.

The validity of the statute of 1812, under which *Flagg* claimed to act, is next to be examined. We are called upon to decide this statute unconstitutional and void. While we are called to administer the laws of the state, we are bound to consider the constitution as a law paramount to any statute of our legislature.

The constitution is a law to the legislature as well as to us; and, should they inadvertently act in violation of this law, their doings must be void. The constitution is an expression of the will of the people by which their public servants must be bound. It is always to be presumed that the legislators will carefully obey this law. Hence we must not heedlessly or wantonly decide their acts void, nor do it in any case till they are clearly so; especially as their power has no other limits than those prescribed in the constitution, and those resulting from the nature and principles of right and wrong, which must stand as boundaries to the sphere of every legislative operation. It has been said by some that the legislators are the sole judges whether their acts are constitutional; and that their acts are an expression of their decision upon the question. If this were so, the remedy of the people against oppressive acts, when there might be such, would be very slow and uncertain; depending upon the increased wisdom and patriotism of the legislative body, or upon changes of its members by new elections. The counsel have presented no difficulty with regard to the power and duty of the court, if they should consider the act in question unconstitutional. All consider it our duty, in such a case, to declare it void.

The objection to this act is, that it interferes with the vested rights of the heirs, and is a judicial act, belonging in its nature to the probate courts. The counsel endeavor to assimilate this to several acts decided void by this court. They cite *Dupy, qui tam,* vs. *Wickwire,* 1 *Chip.* 237. The amount of the decision in that case is, that an act, which was in the nature of a *mandamus* to the court, requiring the admission in evidence of a deposition already in existence, and rejected by reason that the caption did not describe correctly the parties to the action, was void and

RUTLAND,
February,
1829.

Langdon
vs.
Strong et al.

not binding upon the court. This act is liable to the two objections of being a judicial act, and varying the rights secured to the parties in the action by the general laws.

They next cite *Starr* vs. *Robinson*—1 *Chip.* 257. That was an act of suspension used in defence of a suit upon a prison bond, the condition of which had been broken before the act passed. This was decided void. It was clearly at war with the plainest rights of the plaintiff in his suit upon the bond.

*Bates* vs. *Kimball*, administrator of *Barber*, in 2 *Chip.* is also cited. There the court decided void an act which allowed an appeal from the decree of the probate court in a particular case, after the expiration of the time allowed for that purpose by the general laws. The court considered this void as being a judicial act: its effect being to set aside the probate decree. The case of *Staniford* vs. *Barry*, in 1 *Aikens*, 314, is just like the last case, and decided upon the authority of it.

*Ward* vs. *Barnard*, reported in 1 *Aikens*, 121, decides an act void which forthwith lets a debtor out of prison by name, and suspends all writs, judgments and executions against him for five years. This was a suit upon a prison bond, given, but not broken, before the act passed. The creditor by the general laws had a right to detain his debtor in prison till he paid his execution. This act declares that this particular debtor shall not be so kept in prison.

The plaintiff contends that the act in question is not similar to any of those thus decided down ; and cites a class of cases which he contends are in point to support this statute. In 12 *Wheaton*, 128, *Williams* vs. *Norris*, Chief Justice *Marshal's* observations go to show, that it was no objection to a law, in other respects constitutional, that it was particular and applied to the evidence in a particular future event. The case of *Mason* vs. *Haile*, in the same book (*page* 370) sanctions a special statute of *Rhode Island*, passed at the request, and for the sole benefit, of *Haile*, and which, in a circuitous manner, discharged him from prison, and formed a defence to a suit upon his prison bond. This statute pointed to future operations to test the poverty of the prisoner and effect his discharge. It may well be inferred, from the reasoning of the court, that they would have decided otherwise if the statute had been an absolute discharge of the prisoner, taking effect forthwith.

In the case of *Rice et al.* vs. *Parkman*, 16 *Mass. Rep.* 326, the court decided that an act of the legislature, authorizing a guardian to sell the lands of his ward, and a sale pursuant thereto, form a valid transfer of the same land ; notwithstanding the gene-

RUTLAND,
February,
1829.

Langdon
vs.
Strong et al.

ral statutes had delegated the same power to the courts of justice : *Chief Justice Parker* saying, the general power might be wholly revoked by the legislature : also adding that this power, given to the courts of justice, was not properly a judicial power, and might as well have been given to the selectmen of each town, or to the registers of the respective counties.  In 2 *Johns. Cha. Rep.* 172,. *Mason et al.* vs. *Suidam et al.* the sheriff made sale of land on execution, and died without executing a deed to the purchaser. A special statute authorized the executors of the sheriff's will to give the deed, which was given accordingly.  The court adjudged the act constitutional and the deed valid.

In 5th of *Day's Rep.* 88,  *Coe* vs. *Talcott*, one of the parties claimed under an administrator's deed, given under a special act authorizing the sale, and  no objection was  taken to its validity, though the suit was sharply litigated.

The reasoning adopted by the court in the case cited from 8th of *Johns.* 432, *Catlin* vs. *Jackson*, sanctions special statutes that are made to aid the exercise and enjoyment of rights, without infringing the rights of other persons.

*Cruise*, on real property, *(vol. 3, pages 514, 576, 521-2,)* collects several cases of private acts of parliament, authorizing what could not be done without such acts, among which are the following.  A, holding real estate in strict settlement, wanted to exchange with B, and obtained an act vesting his estate in B.  An estate, holden in strict settlement, was charged with the payment of a sum of money ; a private act, vested the whole in trustees in trust to sell, and pay off the debts and vest the overplus, if any, in lands to the old uses.

So a private act authorized a tenant for life to make long leases beneficial to the estate, which he could not do before.  Another authorized a tenant to expend his own money on improvements beneficial to the inheritance, and charge the same on the estate.

Another authorized a bishop to exchange away some of the lands of his bishoprick.  Another vested the estate of a lunatic in trustees, to sell and pay debts and clear off incumbrances, and apply the money under the direction of chancery.

Another confirmed a fair and just partition among co-parcenors, some of whom were lunatics and some infants.  This bound all concerned, including remainder men.

Another authorized a male infant, desirous of marrying, to make a settlement of his estate, and made it valid as if he were of age.  All persons, in any way interested, usually have notice of the petition for such act.  But, where A, tenant for life, with remainder to his first and other sons, in tail mail, with remainder ov-

RUTLAND,
*February,*
1829.

Langdon
*vs.*
Strong et al.

er, petitioned parliament, and, without notice to those in remainder, obtained an act authorizing the sale of the estate, it was decided that this barred those in remainder as fully as a common recovery would have done.

On inspection of the year books, for thirty years past, we find that the legislature of this state have passed acts almost every year, and several in some years, authorizing administrators to sell the lands of the intestates, under circumstances named in each case ; and likewise empowering guardians to sell the real estate of their wards. And this legislation has come down to the present period, notwithstanding the cautions furnished the legislature by numerous decisions upon constitutional law. If such statutes may not pass, to aid the doings of what ought to be done, without waiting the slow operation of general laws, and that, in cases where no person is, or can be, injured, what means the power *to redress grievances,* given to our legislature in the 9th section of our constitution ?

So long have such statutes been frequent, so numerous have they become, and to such an amount is property holden under them, they ought not, for this reason, to be rejected as nugatory, unless their repugnancy to the constitution is clear and certain.

What, then, is the character and tendency of the act under consideration ? It recites greivances to be redressed. The property is chiefly wild land, and large debts are due from the estate, and forcing an immediate sale will nearly sacrifice the whole.—— There are two administrators also, and one is gone into the army of the *United States,* and cannot at present be come at to execute deeds as they may be wanted when sales are agreed upon. To redress these grievances that act provides that the creditors, who will receive these lands in payment of their debts, may have them at a discount not exceeding 25 per cent. from an appraisal to be made by men to be agreed upon by the parties for that purpose ; and that *Flagg* alone might execute the deeds without calling the other administrator home from the army for that purpose. This is the simple purport of the act so far as relates to this action. It is difficult to conceive what tendency this could possibly have to divest or injure the rights of the heirs. Their rights, as before noticed, were, that the personal estate should first be appropriated to pay the debts, then so much of the real estate as would pay the residue, and have what remained of the real estate divided among them. That part of the real estate, which should go to pay the debts, never belonged to the heirs. They had no interest in it. It was for their interest to have this sold off, and thus divided from what would afterwards belong to them. It was for their interest, also, that the sales should be advantageous, that

RUTLAND,
*February,*
1829.

Langdon
*vs.*
Strong et al.

a greater portion might be left for them to inherit. The object and tendency of this act was, therefore, not to dispose of any thing that belonged to the heirs, but to divide off to the creditors what belonged to them, and leave what belonged to the heirs. Thus far then this act compares not at all with any one of those considered void in the cases cited. It compares more with those that authorize guardians to sell the real estate of their wards. It does not attempt to enact that the property of one person shall become the property of another. It looks forward in its operations altogether. It uses no compulsory language. The administrator is not obliged to make use of the act in selling. He cannot sell to any but in payment of the debts of the creditors. He can sell nothing but what belongs to the creditors; and they are not obliged to receive their debts in this way. But *Flagg may* so convey to such as *will* thus receive their pay in land.

The defendant's counsel urge, however, that such a conveyance as the act authorizes may dispose of more land than belongs to the creditors, and leave too little for the heirs. If the act compelled the administrator thus to convey, without any alternative, there might be some weight in this objection. But, while the act only gives him power thus to convey, if he knows of any more advantageous sale within his power, and does not improve it, his neglect would be as direct a breach of his administration bond as if this act had never existed. He was under bonds to administer faithfuly. He found embarrassments under the existing laws. He petitioned for and obtained this act with a view to aid his administration. His bond and his oath bind him still to make the best sale in his power, whether with or without the aid of this statute, and render a true account of the sale. The act has, therefore, no tendency to injure the heirs in any way whatever. The probability is very great, that a sale to the creditors under the act would be more beneficial to the heirs than any that could be made for ready cash with which the debts could be paid. No doubt can be entertained that this probability influenced *Flagg* to petition for the act, and the legislature to grant it.

If we are correct in the foregoing principles, and have presented the true tendency of the act, the objection, that the act authorizes one to do that in which the existing laws required the concurrence of both administrators, is already answered. The general laws required both administrators to join in a deed. But this was inconvenient, as one was absent. The act authorizes one to do that which ought to be done, more speedily than can be done by both. So an act authorizes a guardian to sell the lands of his ward, which he could not sell without such act; or to sell them sooner

RUTLAND,
February,
1829.

Langdon
vs.
Strong et al.

than he could do without the act. This and the other are proper acts for the legislature to pass when the circumstances require it.

But it is said that the judge of probate had power to appoint anew when one administrator is gone and cannot administer. We answer, perhaps this is not a case of that kind. Perhaps the absence of *Rufus Parker* was not of that permanent character, that would authorize the judge to interfere. He might refuse to resign because he expected to return and administer. This act might be necessary for that which the judge of probate could not do in such temporary absence. Besides, the making appointments is not properly a judicial act. It is a probate act, but not judicial within the meaning of the constitution, which requires the legislative and judiciary departments to be kept separate. That clearly has reference to courts of justice organized for the trial of causes both civil and criminal. The empowering one alone to give the deed in payment of debts, cannot be so great a stretch of power as to authorise a guardian to sell the real estate of his ward, or the executor of the deceased sheriff to give a deed to perfect a sale made by the sheriff before his decease.

If this part of the act be valid, it is by no means certain that the proceedings need the support of any other part. The probate records show that a sale of real estate was necessary to raise over $9,000 to pay the debts, and that an order issued to the two administrators to sell to that amount. They might sell at private or public sale. Both might have conveyed to the plaintiff just as the one has done, and the conveyance would have been valid. Now let the statute make the deed of one good, without the other, and the plaintiff's title is established. True, it does not appear that the administrators made a return of their order, with an account of this sale to the judge of probate; but that would necessarily be done after the execution of the deed, and was the business of the administrators in rendering their account to the court of probate; and their neglect to make return must not defeat the plaintiff's title.

If, however, all the provisions of this statute are necessary to give the plaintiff a title, how have these been pursued? The great objection under this head is, that the deed was given before the appraisal. Stress is laid in argument upon the expression in the statute, "*which being done*," that is, the appraisal being made.

There are two answers to this objection. *First,* There being a bond taken at the date of the deed securing a future appraisal, and an adjustment according to it, when made, it may be considered as done at the date of the deed, so far as respects the validity of the deed: though it must be done, in fact, before a settlement. Especially may this be so considered, as it appears from the case

RUTLAND,
*February,*
1829.

Langdon
*vs.*
Strong et al.

that the plaintiff's provisional allowance for the land, at the date of the deed, exceeded its appraised value. *Secondly.* The obvious meaning and object of the statute is, that there should be a fair appraisal on the sale ; and when that has taken place, and a deed is given, the sale is complete, and from thenceforth the deed would be unconditionally valid. So the appraisal, when complete, may operate retrospectively, and render the deed valid from the beginning ; in the same manner as the recording of a deed operates back to its date, when no other title intervenes. It is observable, in this case, that the defendants set up no claim that arose between the date of the plaintiff's deed, and the completion of the business by appraisal. But the defendants contend that *Flagg,* as administrator, took no security from the plaintiff when the deed was executed ; because, they say, that the plaintiff's bond bound him to *Flagg,* in his own person, and not as administrator. They might as well object to the validity of an administrator's sale, that the note for the purchase money was made payable to the administrator in his own person, and not as administrator. Written contracts with an administrator are usually so drawn that he may sue in his own right, without naming himself administrator : and, if he does so describe himself, in such a case, he need not make a profert of his letters of administration. In all such cases the administrator stands as trustee for the estate as he would if he received the money instead of taking a bond or note ; and must account for the avails, when received, as fully as if payment had been made at the time of the contract. The bond, therefore, which *Flagg* received of the plaintiff was not only of legal force, and one which *Flagg* might prudently take, but it has proved efficacious in the result. The land has been appraised, and the avails applied to the diminution of the debts due from the estate of the deceased.

The title of the plaintiff being thus considered good, it cannot be defeated by any after title acquired by the defendants, whether from the heirs or the administrators.

The question of estoppel urged at bar ceases also to be important. So does the question whether the deed of 1824, from the administrators to *Strong,* be sufficient upon the face of it to convey any estate. I will observe however, that I discover no ground on which such a deed conveying all the land of the deceased, without describing any in particular, can be supported. It could not be known by the present generation whether the administrators accounted for all they sold, nor whether they made a good or a bad bargain in point of actual value. Property of the deceased, newly discovered, could not be inventoried as required by the

statute, if it had ceased to belong to the estate by such a general conveyance.

The opinion of the majority of the Court is, that the judgment of the county court be affirmed.

Judgment affirmed.

*Williams* and *Marsh*, for plaintiff,
*Smith* and S. *Royce, Jun.* for defendants.

N. B.—*Prentiss*, J. was not with the Court at the last argument and decision. But he heard the argument in 1828 ; and, on learning the above decision, he assented to it as correct.

T. H.

N. B.—Since writing the foregoing opinion, and preparing the report, I have seen the opinion delivered by *Justice Story*, on the 25th of February, 1829, in the case of *Wilkinson*, plaintiff in error, vs. *Leland, et al.* in which opinion he asserts that the justices of the Supreme Court of the U. S. were all agreed. They decided to be constitutional, and valid, a statute of *Rhode Island*, enacted to confirm a sale by an executrix, living in *N. H.* of lands in *Rhode Island*, she not having proved the will in *Rhode Island*, and it being agreed that her deed was void without the statute, and it appearing that the sale was necessary to pay the debts of the deceased. T. H.