[CONSTITUTIONAL LAW.  PRACTICE.]

WILLIAMS *against* NORRIS.

Under the 25th section of the Judiciary Act of 1789, c. 20., where
the construction of any clause in the constitution, or any statute
of the United States, is drawn in question, in any suit in a State
'Court, the decision must be against the title or right set up by the
party under such clause of the constitution or statute, or this Court
has no appellate jurisdiction in the case.  It is not sufficient that
the construction of the statute was drawn in question, and that the
decision was against the title of the party : it must appear that
his title depended upon the statute.

Where, in such a case, the validity of a statute of any State is drawn
in question, upon the ground of its being repugnant to the consti-
tution of the United States, and the decision has been in favour of
its validity, it is necessary to the exercise of the appellate jurisdic-
tion of this Court, that it should distinctly appear that the title or
right of the party depended upon the statute.

The opinion of the Court, or the reasons given for its judgment,
(unless in the case of instruction, to the jury, spread upon the re-
cord by a bill of exceptions,) form no part of the record within the
meaning of the above 25th section.  Nor are they made a part of
the record in Tennessee, by the local law of that State, requiring
the judges to file their opinions in writing among the papers in the
cause.

No orders in the State Court, after the removal of the record into
this Court, (not made by way of amendment, but introducing new
matter,) can be brought into the record here.  The cause must be
heard and determined upon the record as it stood when removed.

THIS cause was argued by Mr. *White* and Mr. *Eaton*, for · *Jan. 11th.*
the plaintiff,[a] and by Mr. *Benton* and Mr. *Polk*, for the de-
fendant.[b]

Mr. Chief Justice MARSHALL delivered the opinion of *Jan. 19th.*
the Court.

This is a writ of error to a judgment rendered in the

a Miller v. Nicholls, 4 *Wheat. Rep.* 311.

b Martin v. Hunter, 1 *Wheat. Rep.* 304.  Inglee v. Coolidge, 2
*Wheat. Rep.* 363.  Lanusse v. Barker, 3 *Wheat. Rep.* 147.

highest Court for the State of Tennessee; consequently this Court can exercise no other jurisdiction in the case than is given by the 25th section of the Judiciary Act.

The counsel for the plaintiff in error contend, 1st. That an act of Congress has been drawn into question in the State Court, and that the decision has been against that act.

2d. That an act of the legislature of Tennessee, which impairs the obligation of a contract, has been drawn into question, and that the decision has been in favour of the party claiming under that act.

As preliminary to a consideration of these points, it is necessary to inquire whether some additional papers which have been brought up by a *certiorari*, constitute a part of the record.

The reasons given by the Court for its judgment, though reduced to writing, and filed with the papers in the cause, form no part of the record.

These papers are, the opinion of one of the judges, which is supposed to have been delivered and filed as the opinion of the Court that decided the cause; and some proceedings which took place in the same Court after the record had been removed into this Court by writ of error.

1. Is the opinion a part of the record?

As a general proposition, every gentleman of the profession will, without hesitation, answer this question in the negative. An opinion not given to the jury, pronounced after a verdict was rendered, and, consequently, having no influence on that verdict, which states merely the course of reasoning which conducted the Court to its judgment, may explain the views and motives of the Court, but does not form a part of its judgment, and cannot constitute a part of the record.

The counsel for the plaintiff does not contend for the general principle, but insists that an act of the legislature of Tennessee makes the opinion a part of the record in the Courts of that State.

An act passed in the year 1809, " to establish Circuit Courts, and a Supreme Court of Errors and Appeals," enacts, " that the judges of the Court of Errors and Appeals, as well as the Circuit Court judges, shall, as to the decisions on all material points, file their opinions in writing among the papers of the cause in which such opinion may be given,

This sentence amounts to no more than a provision that the opinion of the judges shall appear, and shall be preserved with the other papers; but does not make that opinion a part of what is technically denominated " the record," more than the other papers in the cause among which it is filed. Depositions, and exhibits of every description, are papers in the cause, and, in one sense of the word, form a part of the record. In some States they are recorded by direction of law. But, in a jury cause, they constitute no part of the record on which the judgment of an appellate Court is to be exercised, unless made a part of it by bill of exceptions, or in some other manner recognised by law. But the plaintiff relies on the succeeding sentence as making the opinions of the judges a part of the record. That sentence is in these words: " And where a writ of error shall be allowed to reverse the judgment of any Circuit Court, in any cause, the clerk thereof shall send a transcript of the opinion of the judge to the Court of Errors and Appeals, with the balance of the record in the cause properly certified." It is contended, that the words " balance of the record," show the intention of the legislature that the opinion of the judge shall constitute a part of that which is technically the record.

The capacity of a legislature to control the proceedings of Courts is not questioned, and if its will be unequivocally declared, that will must be obeyed; but, in construing a law, implications are not to be drawn from careless expressions, which would produce unreasonable results, and subvert the usual course of legal proceedings. Can the opinion of the judge introduce any fact into the cause? Where a judgment is rendered on a special verdict, for example, can he, by an opinion filed ten days afterwards, control the facts found in that verdict? Or can he, by any thing inserted in his opinion, warrant any legal inferences which the verdict itself would not justify, or in any manner change the legal effect of the finding? If the opinion cannot produce these results, for what purpose is it introduced into the record?

It can be introduced for no other purpose than to suggest to the superior Court those arguments which might other-

1827.

Williams
v.
Norris.

wise escape its notice, which operated in producing the judgment, and which, in the opinion of the legislature, ought to be weighed by the superior Court, before that judgment should be reversed or affirmed. If the judgment should be correct, although the reasoning, by which the mind of the Judge was conducted to it, should be deemed unsound, that judgment would certainly be affirmed in the superior Court. We cannot, therefore, imply from the loose expression which has been cited, so extraordinary a result, as that the opinion of the Court, filed after judgment, as an argument, should be considered as a part of what is technically denominated the record, or should be a supplement to the verdict. In the present case, the opinion which was filed, has been inspected, and seems to have been founded on a construction of the laws of the State, without calling into question the constitution of the United States or any act of Congress. This, however, is not relied on, because, as has been stated, the opinion has no other influence on the cause, than it would have had if published in a book of reports.

If the Court could have doubted on the proper construction of this section, the fact that it has never been understood in the Courts of the State, in the sense for which the counsel for the plaintiff in error now contends, would be conclusive on the question. It is also not entirely unworthy of remark, that so much of the section as requires the judges of the Circuit Court to file their opinions in writing, was repealed before the judgment in this case was pronounced; consequently, that part of the section which contains the words by which the doubt was created, form no longer a part of the law.

Orders made in the cause subsequent to its removal here, form no part of the record in this Court.

The certiorari has also brought up a supplemental record, which contains a motion made in the State Court by the plaintiff in error, after the cause had been removed into this Court, to amend the record or entries of the judgment, by inserting the questions which were decided by the judges. The reasons for and against this motion are spread upon the record; and the facts which would give jurisdiction to this Court, are asserted by the one party and denied by the

other. The Court took time for advisement, and does not appear to have granted or rejected the motion.

This Court is decidedly of opinion, that no orders made in the Court of the State, after the removal of the record into this Court by writ of error, not made by way of amendment, but introducing new matter, could be brought into it, or could in any manner affect it. The cause must be tried on the record as it stood when removed, not upon the subsequent proceedings, which were pressed in the State Court after its final judgment was given. In the present case, nothing is before the Court but the original record.

That record exhibits a caveat against the issuing of a grant on a survey, made for the defendant, and assigns various causes why it should not be issued. The plaintiff claimed under a patent from the state of Tennessee; and the caveat was the proper process to contest the right of the defendant. On the trial, a jury, in pursuance of the act of the legislature of that State of 1807, ch. 1. sec. 8., was "impannelled and sworn, for finding such facts as are material to the cause, and not agreed on by the parties." The jury found, 1st, that on the 3d day of May, 1784, Ezekiel Norris made his entry in the office of John Armstrong, entry taker of western lands, reciting the words of the entry. In the margin, the following words are inserted, "detained for non-payment."

2d. That on the 18th of November, 1815, a duplicate warrant of su vey was issued by the commissioner of West Tennessee to the said Norris, a copy of which is annexed.

3d. The 3d fact is, that the entry was special and the 4th, that the tract of land, which the entry called to adjoin, was notorious.

5th. That the original warrant, No 2047, to Ezekiel Norris, issued and was filed in the comptroller's office of North Carolina, without any endorsement thereon; that it was detained for non-payment. The copy of the warrant is found, and is incomplete, being without the signature of John Armstrong, the entry taker.

The caveatee required the jury to find, as a fact, that the purchase money was paid by Norris, and that the memorandum in the margin, "detained for non-payment," was a

fraudulent entry. The jury refuse to find this fact, and in its stead, find, " that it is not proved to them that the consideration, at the rate of £10 per hundred for every hundred acres, for the entry of the said Ezekiel Norris, in question, was duly paid to John Armstrong, entry taker, &c. and that afterwards it was falsely and fraudulently inserted in the margin of the entry book containing said entry, and opposite to the same, by some person, ' detained for non-payment.' "

The act of North Carolina, which authorized entries to be made in John Armstrong's office, contains the following enactment: That every person claiming, before he shall be entitled to enter a claim for any of the said lands, shall pay into the hands of the entry taker, at the rate of ten pounds in specie, or in specie certificates at their nominal value, &c. for every hundred acres so entered.

The 19th section directs every entry taker within the State, to make out and deliver to the surveyor, on or before the first day of April and the first day of October annually, the warrants for the several entries (which are not disputed) made in his office, with an endorsement prescribed by law, showing the number and date of the entry.

The Circuit Court for the County of Lincoln decided, that Williams, the caveator, had the better right. This judgment was carried to the Court of Errors and Appeals by writ of error, where it was reversed, and the caveat dismissed.

That judgment is now before this Court; and in considering it we are confined to the inquiry, whether the record shows any misconstruction of an act of Congress, or of the constitution of the United States.

In 1789, North Carolina ceded her western territory to the United States, reserving to herself the right of perfecting titles, in all cases where entries had been made according to law.

Under this reservation, several acts were passed, directing warrants of survey to be issued on entries made in John Armstrong's office, where the purchase money had been or should be paid.

In 1796, Tennessee was erected into a State. In 1803, North Carolina entered into a compact with the State of

Tennessee, in which the former ceded to the latter the power to issue grants, and perfect titles to all claims of land lying in the said State, which power had been reserved to herself by North Carolina, in her acts ceding her then western territory to the United States. This compact was assented to by Congress.

In 1806, Congress passed an act, ceding to the State of Tennessee all the rights of Congress to lands lying east and north of a line described in the act.

The land in controversy is within the territory thus ceded by Congress.

If any stipulation in the compact between North Carolina and Tennessee could have affected the controversy between Williams and Norris, it must have been because the title of Norris came within the reservation made by the State of North Carolina in her act of cession to Congress. That reservation was the subject of the compact. As the controversy was not between two persons, claiming under North Carolina, but between a person claiming under North Carolina, and one claiming under the State of Tennessee, and the decision was in favour of the title set up under North Carolina, we cannot perceive how that decision can be considered as a violation of the compact. North Carolina stipulates that titles should be issued by the State of Tennessee for lands to which there were valid claims under her laws, and for which patents might have been issued by her, had the compact not been made. If the title of Norris was valid, according to the laws of North Carolina, then the decision in his favour is in pursuance of the compact; if it was not valid, according to those laws, then the case is not within the compact. In either view of it, the compact has not been violated.

The act which gives the sanction of Congress to this agreement, also cedes to Tennessee a large territory, comprehending the lands in controversy. This cession is made on several conditions, one of which respects all existing claims to lands under the State of North Carolina. Its operation is understood to be, so far as it can affect the case now before the Court, precisely the same with that of the compact between the two States. The same observations

*Margin notes:*

1827.

Williams
v.
Norris.

Compact not drawn in question.

apply to it as were applied to that instrument. The title, for the benefit of which it was intended, if it has any influence in the case, has prevailed. Consequently, neither the compact between the States, nor the act of Congress which assents to that contract, and which confers on the State of Tennessee the power to perfect titles in the district of country which comprehends the lands in controversy, can have been violated.

The validity of a State law, whether drawn in question.

A point of rather more difficulty remains to be considered. It is contended, that the validity of a statute of the State of Tennessee has been drawn into question in this case, on the ground of its being repugnant to the constitution, and the decision has been in favour of its validity.

The act supposed to be unconstitutional is, " an act for the relief of Ezekiel Norris."

It is not stated in the record, that the constitutionality of this act was drawn in question; and the 25th section of the Judiciary Act declares, that " no error shall be assigned or regarded, but such as appears on the face of the record, and immediately respects the before mentioned questions of validity, or construction of the said constitution," &c. The case of *Miller* v. *Nicholls*, (4 *Wheat. Rep.* 311.) has been relied on to prove that it is not necessary to the jurisdiction of the Court that the record should, in terms, state a misconstruction of the act of Congress, or that it was drawn in question. It is sufficient to give the Court jurisdiction, that the record should show that an act of Congress was applicable to the case.

The case of *Miller* v. *Nicholls*, was a claim filed by Mr. Dallas, the attorney of the United States, for a sum of money brought into a State Court of Pennsylvania to be disposed of by the Court. The money belonged to a debtor of the United States, who was also indebted to the State of Pennsylvania. The Court decreed the money to the State, in pursuance, it is presumed, of an act of the legislature, giving the State a preference. The case was brought, by writ of error, into this Court, upon the allegation that the judgment was in violation of the act of Congress, which gives priority to the United States in all cases of insolvency. This Court dismissed the writ of error, because, the fact of

insolvency not having been shown, it did not appear from the record that the act of Congress, or the constitutionality of the State law, was drawn into question. The Court added, that the record need not state, in terms, a misconstruction of the act of Congress, or that it was drawn in question.

The act of Congress applies to every insolvent debtor of the United States, and gives them priority as to all the property of the debtor which he possessed when the insolvency took place ; but it applies only to cases of insolvency. Had the record shown that this was a case of insolvency, so.that the act of Congress applied to it, that act must have been misconstrued, or its obligation denied, when the Court decreed the money to the State of Pennsylvania ; and the Court was of opinion, that the act could not have been evaded, by the omission to refer to it in the judgment, or to spread it on the record.

To apply the principle of that case to this, it will be necessary to show that the title of Norris depended on the act passed in his favour by the legislature of Tennessee, and that the act was repugnant to the constitution.

That act is in these words : " Be it enacted," &c. " that the commissioner of West Tennessee be, and he is hereby authorized to issue to Ezekiel Norris, certificates or warrants to the amount of 2,280 acres, being the amount of two entries, No. 2,046 for 1,000 acres, and No. 2,047 for 1,280 acres, on which no warrants or grants were issued ; provided that the said Ezekiel Norris shall produce sufficient evidence to the said commissioner that the consideration for said entries was paid, and that no warrant or grant ever issued on said entries."

When this act passed, a patent had been granted by the State of Tennessee to the plaintiff in error, comprehending a part of the land covered by the entry of Norris. If its effect was to annul that patent, and to give a new title to Norris, the act would come within the decision of this Court in the case of *Fletcher* v. *Peck*, as a law impairing the obligation of contracts. In determining whether such was its effect, it is necessary to inquire whether Norris's entry was absolutely void, or gave an incipient title, capable of being

carried into grant. If the purchase money was paid, the entry was valid. If not paid, the entry might be void, or only voidable. The words of the act under which it was made have been cited, and may admit of either construction. It is a question for the legislature and courts of the State, and its decision the one way or the other would not be repugnant to the constitution of the United States. It is apparent that the legislature of North Carolina has not considered these entries, where the purchase money was not paid at the time, as being absolutely void, but has supposed them to be capable of being perfected, and carried into grant, as the legislature might direct.

In 1794, the comptroller was directed to issue warrants in all cases in which the purchase money had been paid.

In 1796, it was enacted, that no grants should issue on warrants on entries made in John Armstrong's office, unless it should appear by Armstrong's books, or other sufficient testimony, that the purchase money had been paid. The next succeeding section of the same act authorizes any person entitled to such entry to pay into the treasury the amount or balance of the purchase money, upon which a warrant may be issued.

In 1798, the legislature appointed commissioners to investigate the frauds suggested to have been committed in the Secretary's office, and directed that no grant should issue on warrants obtained on entries which the commissioners might deem fraudulent.

The act of 1799, ch. 7. sec. 16. directs warrants to issue on all entries where the requisites of the law have been, or shall be, complied with.

The legislation of North Carolina, to the year 1803, proceeds upon the idea, that the entries made in John Armstrong's office, for which the purchase money had not been paid, were not absolutely void, but might be made good by paying the purchase money, or such part of it as remained due. The right seems to have been considered as preserved and suspended until the purchase money should be paid. In this state of things, the power of perfecting titles, which had been retained by North Carolina in her Cession Act, was transferred to Tennessee, on condition that titles

should be perfected, or entries made, under the laws of that State, according to the requisites of those laws.

· In 1806, c. 1. sec. 45. the legislature of Tennessee appointed commissioners to decide on the validity of entries, with directions to admit no warrants on entries made in John Armstrong's office, if it may appear to the said commissioners that the purchase money has not been paid.

By the act of 1807, c. 20. sec. 25 and 29. it is enacted, that where it shall appear to either of the commissioners, that entries have been made in John Armstrong's office, on which the purchase money has been paid, in whole or in part, warrants may issue for so much land as has been paid for. But it is provided, that the person exhibiting such claim, shall produce a certificate from the comptroller of North Carolina, showing what sum was paid on the said entry. This act was continued in force till the 1st of January, 1815. In October, 1815, an act passed, directing that there should be one commissioner in East, and one in West Tennessee, each of whom should exercise the powers which had been vested in commissioners by the act of 1806.

We do not understand that the propriety or obligation of these acts has ever been questioned by the Courts of either North Carolina or Tennessee. We do not understand that the Courts of either State have ever questioned the legislative construction of the act, opening the office in which this entry was made. That construction is, that entries received by John Armstrong, though not accompanied by the purchase money, were not absolutely void, but would become valid, should the purchase money be afterwards paid; and that such proof of payment might be received as the legislature should prescribe. It cannot be doubted, that numerous titles are held under this construction of the law. Its correctness or incorrectness does not seem to involve any constitutional question, or any question which can give this Court jurisdiction in a cause which has been determined in a State Court.

Had the claim of Ezekiel Norris been decided by the commissioners acting under the general law, it would probably never have been contested. What difference is there, so far as respects its constitutionality, between the

act passed in his particular case, and the act containing a general reference of all cases of the same description to the commissioner? The difference consists solely in this: the general act admits no other proof of payment than a certificate from the comptroller of North Carolina; the particular act authorizes the commissioner to establish the claim on sufficient evidence; that is, we presume, on such evidence as is generally admissible in a Court of justice. We know of no principle which could impose on the legislature of the State the necessity of exacting from the claimant, under an entry made in John Armstrong's office, as indispensable to the establishment of his claim, a certificate from the comptroller of North Carolina that the purchase money had been paid. The act of 1794 left the fact of payment open to legal proof. The act of 1796 required that it should appear by Armstrong's books, or other legal testimony. If, then, the general act of Tennessee had allowed the commissioner to issue warrants, on sufficient proof, such act might have been questioned on the ground of policy, but not of right.

If this be correct, if the legislature might have dispensed with this testimony in a general law, why may it not be dispensed with in a particular law, where its effect on the cause is precisely the same as if it had been general? There are, undoubtedly, great and solid objections to legislation for particular cases. But these objections do not necessarily make such legislation repugnant to the constitution of the United States.

The act "for the relief of Ezekiel Norris," did not authorize the commissioner to grant him a certificate or warrant on his entry, unless he should prove that the purchase money had been paid. The laws had preserved such entries, and, consequently, an act to enable the proprietor of one of them to prosecute his claim, is not necessarily an act impairing the obligation of a contract.

The question whether the judgment of the commissioner was conclusive evidence that the purchase money had been paid, is entirely distinct from the constitutionality of the law, and the decision of the State Court upon it cannot be revised in this Court.

We are of opinion, that this record does not exhibit a case of which this Court can take jurisdiction, and that the writ of error ought, therefore, to be dismissed.

JUDGMENT. This cause came on, &c. On consideration whereof this Court is of opinion, that there is no error apparent on the face of the record, of which this Court can take jurisdiction. It is, therefore, CONSIDERED by this Court, that the writ of error be dismissed, and that the cause be remanded to the Supreme Court of Errors and Appeals of the State of Tennessee.