THE STATE OF MINNESOTA, Appellant, vs. GEORGE W. BACHELDER, Respondent.

APPEAL FROM THE DISTRICT COURT OF RICE COUNTY.

The Government of the United States has but a proprietary interest in lands within the borders of this State—the sovereignty being in the State. The rights attaching to such interests do not differ from those of any other land holder, except as provided by the Constitution of the United States, and the terms of the compact between the General and State Governments at the time the State was admitted; that is, the State cannot interfere with the primary disposal of the soil, nor with any regulations Congress may find necessary for securing title to *bona fide* purchasers, nor can it tax the land of the United States within its borders. With these exceptions such lands are subject to the same control by the State Government, as any other lands over which its jurisdiction extends.

As a consequence of this, it follows that the State tribunals must have jurisdiction to try and determine conflicting claims to such lands, when they arise between citizens of the State, or the State and a citizen, to the same extent that any other question of title or property may be entertained by its Courts. The only limitations upon the State in regard to the questions cognizable in their Courts are such as have been created by the adoption of the Constitution of the United States; and though the State has consented that the Federal jurisdiction shall extend to all cases in law and equity arising under that instrument, it does not follow that it has relinquished jurisdiction over questions involving private rights, simply because those rights had their origin in some law of the United States.

A Patent can only be impeached in an action commenced in equity, to set it aside, unless it is absolutely void on its face, or the issue was without authority, or was prohibited by Statute. Patents are high record authority, and import verity, and should not be impeached in any Court that does not enjoy a full opportunity to investigate the whole subject upon a regular course of pleading and proof, directed expressly to the points of irregularity or fraud complained of. But where the action is brought under the provisions of the act for determining conflicting claims to real estate, *Compiled Statutes of Minnesota, page* 595, and the fraud is pleaded in the reply, it is as much a direct proceeding to set aside the patent, as would be a bill filed for that purpose. In all matters which by law are confided to the examination and decision of the United States Land Officers, they act judicially, and their decisions are as final as those of other Courts, and a judgment or decree of a Court, or a Patent issuing in virtue of a decision of the Land Officers, even where the Courts and Officers act clearly within the sphere of their several jurisdictions, may be impeached in equity for fraud or collusion in obtaining it. But equity will not afford relief upon the suggestion of fraud alone. It must be made to appear that the applicant has no remedy at law, adequate to his protection. And in an application to set aside a Patent obtained upon a fraudulent pre-emption, if it appear that the applicant had notice and contested, or had an opportunity to contest and did not take advantage of it, the admission of false testimony upon the hearing would not be a sufficient ground for relief.

This action was brought by the State of Minnesota, in the District Court of Rice County, to quiet the title to certain lands in that County, under *Chap.* 64, *page* 595 *Stat. of Minn.* The complaint set forth the following facts :

That this Plaintiff was on the twenty-fifth day of June, A. D., 1860, and ever since that time has been and continued in

the constant, actual and lawful possession of the following described real estate, situated in the County of Rice, and State of Minnesota, to wit: The west half of the south-west quarter, and the south-west quarter of the north-west quarter, and the south-east quarter of the south-west quarter of Section number thirty-six, in Township number one hundred and ten, north of Range number twenty-one west, and is now in the actual possession thereof, and that the Plaintiff is lawfully entitled thereto.

And the Plaintiff further states that the Defendant claims some estate or interest in said premises adverse to the Plaintiff, wherefore the Plaintiff prays this Court to adjudge such adverse claim of the Defendant to be void.

The Defendant appeared and answered, alleging that on the fifteenth day of August, 1857, one Lewis Mills had preempted one hundred and twenty acres of the land, and one John N. Mills another one hundred and twenty acres thereof; that a Patent was issued to the said Lewis Mills for the first named tract, on the tenth day of November, 1859, and that a patent was issued to said John N. Mills for the second tract on the tenth day of November, 1860; and the Defendant claimed title as the grantee of these Patentees.

The Plaintiff replied to the answer as follows:

1st. For reply to the amended answer to the complaint in the above entitled action, the Plaintiff denies that on the fifteenth day of August, A. D., 1857, the legal title to the land described in the complaint was in the United States, but alleges that on the twenty-sixth day of February, A, D. 1857, the United States then being lawfully possessed as owner in fee simple of said land by an act of Congress approved on that day, duly granted and conveyed said land to the Plaintiff, and that the legal title thereof, then vested and has ever since continued in the Plaintiff.

2d. And for a further reply Plaintiff admits that on the fifteenth day of August aforesaid, one Lewis Mills applied to the Register and Receiver of the United States Land Office within and for the District in which said premises are situate, to pre-empt the west half of the south-west quarter, and the south-west quarter of the north-west quarter of Section No.

thirty-six, in Township No. one hundred and ten, north of Range twenty-one west, and received a duplicate or certificate of the pre-emption thereof, and that a Patent was issued therefor to said Mills.

3d. And for a further reply Plaintiff alleges that said purchase and pre-emption was made by fraud and misrepresentation, and that the issuing of said Duplicate and Patent was procurd by fraud and misrepresentation, that said Lewis Mills did not settle on said premises, did not erect a dwelling house thereon, and did not make, or cause to be made any improvements thereon prior to the survey thereof by the Government of the United States, and did not in any respect comply with or bring himself within the provisions of a joint resolution of the Congress of the United States entitled " A resolution relative to Sections sixteen and thirty-six in the Territories of Minnesota, Kansas and Nebraska," approved March third, 1847, or of an act approved September fourth, 1841, but that the said Mills, well knowing the premises and with intent to defraud the Plaintiff, falsely and fraudulently represented to the officers of such Land Office that he had settled on said premises and had erected a dwelling house and made divers improvements thereon prior to said survey, and by fraud and misrepresentation induced one George Dazner to make a false oath and affidavit to said settlement, the erection of said dwelling house, and improvements, and the Plaintiff avers that without such oath and affidavit and without such representation so fraudulently made and procured, said officers would not have allowed said Mills to pre-empt said premises and said Duplicate and Patent would not have been issued to said Mills by the Government of the United States as aforesaid.

4th. And for a further reply Plaintiff admits that one John N. Mills on the fifteenth day of August, A. D., 1857, applied to the officers of the Land Office in and for the District where the premises described in the complaint are situate, to preempt the east half of the south-west quarter, and the southeast quarter of the south-west quarter of the section hereinbefore mentioned, and purchased and pre-empted the same, and that a Duplicate or Certificate of pre-emption of said

premises was issued to said Mills and that thereafterwards a Patent was issued therefor by the United States Government to said Mills.

5th.    That said pre-emption was effected and said Duplicate and Patent procured by the fraudulent representations of said Mills, that said Mills well knowing the premises, falsely and fraudulently represented to said officers that he had settled upon said land, had erected a dwelling house thereon and made improvements thereon prior to the survey thereof by the United States Government, and procured one George Dazner to make a false oath and affidavit of said settlement, the erection of such dwelling house and improvements, before said officers, and that said officers were thereby induced to allow said pre-emption and to issue said Duplicate, whereas in truth and in fact said Mills did not settle on said land, did not erect a dwelling house thereon, and did not make any improvements thereon prior to said survey, and did not in any respect bring himself within the provisions of a joint resolution of the Congress of the United States, entitled a resolution relative to Sections sixteen and thirty-six in the Territories of Minnesota, Kansas, and Nebraska, approved March third, 1857, or of an act of Congress approved September fourth, 1841.

6th.    And Plaintiff further says that Defendant purchased all of the premises hereinbefore mentioned with full notice of the Plaintiff's title and of the fraudulent procurement of said pre-emption.

7th.    And for a further reply, Plaintiff alleges that the Register and Receiver of the United States Land Office at Fairbault had no authority or jurisdiction to make the order and judgment set forth in said amended answer, and had no authority or jurisdiction to grant said land to, or allow the same to be pre-empted by, said Lewis Mills or said John N. Mills, for that no settlement by the erection of a dwelling house on said land, or the cultivation of any portion thereof by the said Lewis Mills, or the said John N. Mills was made on said land before the said land was surveyed by the United States Government, and for that no settlement thereon by the erection of a dwelling house or the cultivation of any por-

tion thereof was made by any person whatever before the said land was surveyed by the United States Government.

8th.   And as to each and every allegation of new matter, in said answer contained, not herein expressly admitted the Plaintiff denies the same.

The Defendant demurred to the third, fifth, sixth and seventh grounds of reply, because it did not state facts sufficient to constitute a ground for reply.

The Demurrer was sustained and the Plaintiff appealed to this Court.

### Points and Authorities of Appellant.

We accept as undoubted law the doctrine established by this Court in *Leach vs. Rauch*, 3 *Minn.* 448, *and Camp vs. Smith*, 2 *Minn.* 155, that a Patent cannot be impeached by a *subsequent grantee* for irregularities in the preliminary steps upon which it is based, and that the decision of the Register and Receiver acting within the limits of their jurisdiction, is final and conclusive.

The rule however does not apply—

1st. When the officers act without the pale of their authority.

2d. When the Patent is obtained by the fraud and perjury of the Patentee.

3d. When the action is brought, not by a subsequent grantee to impeach a prior Patent, but by a grantee seeking to establish his priority of title and thereby show that the common grantor had no title to convey to the Defendant.

4th. When the object of the evidence is to define and fix the limits of the grant and thereby to show that it covers land claimed by the adverse party.

*First.*—When the Land officers acted without the pale of their authority :

1. When the state has no title to the thing granted, or the officer has no authority to issue the grant, the acts of such officer are absolutely void and are necessarily examinable at law. *Ladiga vs. Rowland*, 2 *How.* 581 ; *Wilcox vs. McConnell*, 13 *Peters*, 498 ; *Patterson vs. Winn*, 11 *Wheat.* 380 ;

*Polk's Lessees vs. Wend.* 9 *Cranch*, 87 ; *United States vs. Arredondo*, 6 *Peters* 691. *Minter vs. Crommelin*, 18 *How.* 87.

2. The act of February twenty-sixth as modified by the joint resolutions of March third, conveyed to the State an absolute title to Sections sixteen and thirty-six upon the acceptance of the propositions contained in the enabling act by the State, the grant taking effect by relation from the date of the act of February twenty-sixth, except to such portions as had been settled upon and improved prior to the survey, the title to which only remained in the United States, and subject to the jurisdiction of its officers. *Sec.* 5, *Act of Feb.* 26, *p.* 13, *Comp. Stat.* ; *Res. No.* 12, *p.* 254, *U. S. Stat. at large*, 1856–7; *Gaines vs. Nicolson*, 9 *How.* 356 ; *Ham vs. State of Missouri*, 18 *How.* 126 ; *Cooper vs. Roberts*, 18 *How.* 173 ; *Rutherford vs. Green's heirs*, 2 *Wheat.* 196 ; *United States vs. Brooks*, 10 *How.* 442 ; *Grignon's Lessee vs. Astor*, 2 *How.* 319.

*Second.*—When the patent is obtained by the fraud or perjury of the patentee.

Fraud vitiates all transactions, and want of jurisdiction in the officer or tribunal, or fraud of the party in obtaining a judgment or Patent, may be investigated at law and the judgment or Patent impeached by parol testimony. *See cases cited to the first subdivision of last point* ; *Chitty on Con.* 8*th Am. Ed. p.* 586 *a.* ; *Stoddard et. al. vs. Chambers*, 2 *How.* 284 ; *Bagnel vs. Broderick, McLean J.* 13 *Peters*, 436 ; 15 *Johnson's Reps.* 121, *Borden vs. Fitch* ; *Boardman vs. Lessees of Reed & Ford*, 6 *Peters* 338 ; *Shummy vs. Stillman*, 4 *Cowan*, 292 ; *Hilliard Real Prop. pp.* 276, 236, *notes and cases cited* ; *Boring vs. Lemmon*, 5 *Har. aud John.* 223 ; *Garretson vs. Cole*, 1 *Har. and John*, 370 ; *Herdman vs. Reed*, 4 *Harris & McH.* 6 ; *Crommelin vs. Winter, Ala.* 594 ; *White vs. Jones*, 4 *Call*, 263 ; *Seward vs. Hicks*, 2 *Bland.* 261 ; *Hambletin vs. Mills*, 8 *Call*, 213.

But while it is conceded that fraud is a ground for impeaching the Patent, it is contended that a Court of Chancery is the only competent tribunal to try this question.

State of Minnesota v. Bachelder.

All the cases relied upon in support of this doctrine were cases in which a prior patent was sought to be impeached by a subsequent grantee, or a person without color of title. *See Parmelee vs. Oswego & Syracuse Railroad Company,* 7 *Barb.* 599, 622.

And it is distinctly admitted that if the question of the authority of the sovereign is involved, or if the land had been granted to another person, the question would be examined at law. *People vs. Livingston,* 8 *Barb.* 253, 285; *Galipot vs. Manlove,* 1 *Scammon,* 156–161; *See Hilliard on Real Prop. p.* 276, *Sec.* 286.

In the case at bar, the Plaintiff claims under a higher evidence of title than the patent even, (*see Grignon's Lessee vs. Astor,* 2 *How.* 319,) and the fact which he seeks to prove is a *prior* grant to himself.

There are, however, two conclusive answers to this objection.

1. The action is brought to remove a cloud upon the title and is of equitable cognizance. The relief sought could never have been obtained in a suit at law. *Van Santvoord's Eq. Prac.* 25; *Willard's Eq. Jur.* 42; *Sections* 6 *and* 7, *p.* 557; *Section* 1, 595, *Comp. Stat.; State vs. Fish,* 2 *Minn.* 153.

The objection which alone is urged against trying a question of fraud in ejectment, that the pleading affords the party no notice, is obviated by these pleadings and the fraud put directly in issue.

2. There is no longer any distinction in this State between legal and equitable remedies. Either may be administered under the same forms; both may be sought in the same action. They are governed by the same general rules of pleading and practice. The question is not whether the Plaintiff has a legal right or an equitable right, or the Defendant a legal or an equitable defence : but whether according to the whole law of the land applicable to the case, the Plaintiff makes out the right which he seeks to establish, or the Defendant shows that the Plaintiff ought not to have the relief sought for. *Van Santvoord's Eq. Prac.* 18–20; *Williams vs. Hays,* 5 *How. Pr. Rep.* 470; *Crary vs. Goodman,* 2 *Kernan,* 266.

28

State of Minnesota v. Bacholder.

Hence it has been held that an answer may set up fraud to impeach a judgment in a suit at law upon such judgment. *Dobson vs. Pease*, 2 *Kernan*, 156; *See Sec.* 5, *p.* 481, *Comp. Stat.*

The same rule governs the reply.    *Van Santvoord's Eq. Prac.* 252.

If it be said that the reply is redundant or irrelevant, we answer that the criterion in such cases is whether the allegation in question can be made the subject of a material issue. *Williams vs. Hays*, 5 *How.* 470 ; *Van Santvoord's Eq. Prac.* 104–165; *Demthorne vs. Demthorne*, 15 *How. Prac. Rep.* 232 ; *Melona vs. Dows*, 15 *How. Prac. Rep.* 261.

*Third.*—When the action is brought by a grantor seeking to establish his priority of title, and thereby show that nothing passed by the conveyance to the Defendant.

The Plaintiff's claim has the highest sanction of the Government, an act of Legislation, and the sole inquiry is whether the defendant has any title as against the Plaintiff. It is a question of conflicting title.    *Stoddard vs. Chambers*, 2 *How.* 284 ; *Gaines vs. Nicolson*, 9 *How.* 356 ; *Mayor, &c. of New Orleans vs. DeArmas*, 9 *Pet.* 223 ; *Hoofnagle vs. Anderson*, 7 *Wheat.* 212 ; *Ladiga vs. Rowland*, 2 *How.* 581 ; *Isaacs vs. Steele*, 3 *Scammon*, 99.

*Fourth.*—Where the object of the evidence is to define and fix the limits of the grant.

The Defendants object to all parol testimony and rely upon the inviolability of the patent.

If we show that the demanded premises were not settled upon or improved prior to the survey, we show that the grant to the State included them, and therefore left no title to pass to the Defendants.    When the precise location, limits or quality of lands is left by the deed to be determined by facts extraneous and independent of the deed, parol evidence is admissible to define the limits of the grant.    *Allen vs. Bates*, 6 *Pick.* 460 ; *Waterman vs. Johnson*, 13 *Pick.* 261; 1 *Greenleaf Ev. Sec.* 286, 287, 288 ; 2 *Starkey on Ev.* 7th *Am. Ed.* 773–4; *Baker vs. Sanderson*, 3 *Pick.* 348.

Points and Authorities of Respondent.

*First*—The decisions of the Register and Receiver of the Land Offices of the United States in regard to pre-emption Claims are judicial determinations and their certificates of allowance are final and conclusive. *McConnell vs. Wilcox*, 1 *Scam*. 353 ; *Bruner vs. Manlove et. al.* 1 *Scam*. 156 ; *Bennett vs. Forrest et. al.* 2 *Gil*. 598 ; *Leech vs. Rauch*, 3 *Minn*. 451 ; *Gray vs. McCorice*, 14 *Ill*. 347 ; *McGhee et. al. vs. Wright*, 16 *Ill*. 555 ; *Mitchel vs. Cobb*, 13 *Alabama*, 137 ; *McCready vs. Goldsmith*, 18 *How*. 87 ; *Cooper vs. Roberts*, 18 *How*. 173.

*Second*.—When a patent has issued on a duplicate, even the Court will presume that the steps preliminary to a valid disposition of the lands have been taken. *Barney vs. Gamble*, 8 *Miss*. 88 ; *U. S. Dig*. 5, 668, *Sec*. 94 ; *Polk's Lessee vs. Wendal*, 9 *Cranch*, 98–99 ; *McCready et. al. vs. Goldsmith et. al.* 18 *How*. 87.

*Third*.—After the entry the rights belonging to the pre-emptor as to the land are those acquired by reason of his having purchased a portion of the public land, and are not different from the rights of other purchasers. They depend wholly upon the fact of purchase and not of pre-emption.

His purchase can be annulled only by his being first convicted of fraud in making his pre-emption or perjury in the oath taken, in a Court of competent jurisdiction. *Camp vs. Smith*, 2 *Minn*. 168 ; *U. S. Stat*. 5, 456, 457 ; *Goodlet vs. Smithson*, 5 *Porter* 245 ; *U. S. Dig*. 5, 667, *Secs*. 60, 61, 62, 63.

The title of the pre-emptors to the land in controversy became complete on proving up, paying the purchase money and receiving their duplicates, to wit : on the fifteenth day of August, 1857, up to which time the title to said land was in the United States. *See Authorities cited on the last point*.

*Fourth*.—The State Courts have nothing to do with the question whether a pre-emption entry was properly or improperly made, as to whether sufficient or legal proof was made to entitle the applicant to enter, nor indeed as to whether there was any proof at all. *Leech vs. Rauch*, 3 *Minn*. 451 ; *Gray vs. McConner*, 14 *Ill*. 347, 348 ; *McGhee et. al.*

*vs. Wright,* 16 *Ill.* 557; *Bruner vs. Manlove,* 1 *Scam.* 161; *McConnel vs. Wilcox,* 1 *Scam.* 353 ; *Bennet vs. Frazer,* 2 *Gil.* 598 ; *Wilcox vs. McConnell,* 13 *Peters,* 511.

*Fifth.*—A patent issued by the United States to a pre-emptor regular on its face can be impeached or avoided, if at all, only by a decree in a Federal Court, not in an action at law or any collateral action, but upon a bill in equity for that purpose, setting forth the grounds for avoiding the same and praying for relief sought to be obtained. *See authorities cited on last point*; also *Boysnell vs. Broderick,* 13 *Peter,* 436, (13 *Curtis* 235) ; *Patterson vs. Wison,* 11 *Wheat.* 381–384, (6 *Curtis* 634); *Polk's Lessees vs. Wendal,* 9 *Cranch* 98 ; *McCready et. al. vs. Goldsmith et. al.* 18 *How.* 87 ; *Cooper vs. Roberts,* 18 *How.* 163 ; *Parmelee vs. Oswego and Syracuse R. R. Co.* 7 *Barb.* 599 ; *People vs. Livingston,* 8 *Barb.* 285–287 ; *Jackson vs. March,* 6 *Cowan,* 281; *People vs. Morrow,* 5 *Denio* 389 *and* 398 ; *Jackson vs. Lawton,* 10 *John.* 23 ; *Jackson vs. Hoit,* 12 *John.* 77.

*Sixth.*—The Register and Receiver of the United States Land Office have the same jurisdiction and power to try and determine all questions as to the right of pre-emption arising under the joint resolution of March third, 1857, as under other pre-emption laws. They have the same authority to hear and determine the rights of the settler whether the settlement *in fact* had been made before or after the lands have been surveyed by Government. *See joint resolution of Congress,* 5 *U. S. Stat.* 456 ; *United States vs. Arredondo,* 6 *Pet.* 709 ; *McCrady et. al. vs. Goldsmith, et. al.* 18 *How.* 89 ; *Grignon's Lessee vs. Astor,* 2 *How.* 338, (*Jurisdiction defined.*)

*Seventh.*—The Court below committed no error in sustaining the demurrer for the reason that that portion of the Plaintiff's reply which was demurred to was insufficient and contained nothing but irrelevant matter. The same had been already tried and judicially determined by the Register and Receiver of the proper land office, having exclusive jurisdiction to try and determine the same. *Van Sant. Pl.* 323 ; *Fabricote vs. Lounits,* 3 *Sand.* 744; *Leech vs. Rauch,* 3 *Minn.* 448.

*Eighth.*—This action could not be maintained for the reasons—

1st. The action is brought in a State Court which has no power to grant the relief sought.

2d. The action is brought under the " Act to determine conflicting claims to real property," under which act the actual possession of the land by the Plaintiff in person or by tenants is necessary to constitute a cause of action.

The State under existing laws could not have acquired such possession of the land as would entitle it to commence this action.

3d. This action is in no respect an equitable action or in the nature of one, and if the pleadings were true and the facts admitted, it would not entitle the Plaintiff to the relief sought in any Court. *Compiled Stat. Minn.* 480 ; *Van Sant. Pl.* 40 *to* 45 ; *Howard vs. Tiffarny*, 3 *Sand.* 695 ; 9 *Barb. S. C. R.* 657 ; *Rochester City Bank vs. Suydam et. al.* 5 *How. Pr. Rep.* 216.

The Plaintiff claims no title prior to the passage of the enabling act of February twenty-six, 1857, and under this act as modified by the joint resolutions of March third, 1857, and accepted by the Constitutional Convention, August twenty-ninth, 1857.

The joint resolution of March third, 1857, was passed by Congress in response to, and in pursuance of a memorial of the Legislature of the Territory of Minnesota, passed February twenty six, 1856. *Session Laws of* 1856, *page* 368.

*Ninth.*—The State of Minnesota, under the act of February twenty-six, 1857, or any other act, acquired no title or right from the United States to any lands embraced in Sections sixteen and thirty-six till the acceptance of the " First proposition" contained in said act by the Constitutional Convention on the twenty-ninth day of August, 1857, and then to no portion which had been previously sold or otherwise disposed of by the United States.

The grant to the state does not take effect by relation from February twenty-sixth.

It cannot defeat or affect any vested right acquired by a

purchaser from the United States prior to its acceptance by the Convention.

This is evident from the language employed in the act, to wit:

"That the following propositions be and the same are hereby offered to the said Convention of the people of Minnesota for their *free acceptance* or *rejection*, which *if accepted* by the Convention *shall be obligatory on the United States and upon the said State of Minnesota.*" *See enabling act, Comp. Stat. Minn.* 42; *Horn vs. State of Missouri,* 18 *How.* 126.

GORDON E. COLE, Attorney General.

BACHELDER & BUCKHAM, Counsel for Respondent.

*By the Court.*—FLANDRAU, J.—This Court has on a former occasion examined the position occupied by the United States, and its rights as a land holder within the borders of this State. In the case of *Camp vs. Smith,* 2 *Minn. R.* 155 to 175, that question was fully discussed and our views there expressed are substantially that the United States has but a proprietary interest in such land, the sovereignty being in the State. That the rights attaching to such interest do not differ from those of any other land holder in the state except as provided by the Constitution of the United States, and the terms of the compact between the general and State governments at the time the State is admitted into the Union. These exceptions are as follows:

The Constitution of the United States by *Article four, Section three* provides that "The Congress shall have power to dispose of, and make all needful rules and regulations respecting the Territory or other property belonging to the United States."

The act of Congress authorizing the people of the Territory of Minnesota to form a Constitution and State government preparatory to their admission into the Union, &c., passed February twenty-six, 1857, contained certain propositions to the people of Minnesota subject to their acceptance or rejection.

On the part of the United States, the government offer to'
grant to the State certain lands for school, University and
public building purposes, also, salt springs and adjacent lands,
and five per cent of the net proceeds of the sales of the pub-
lic lands lying within the State, upon the condition that the
State will by a clause in its Constitution, irrevocable withov .t
the consent of the United States, provide that the State sh ,ll
never interfere with the primary disposal of the soil wi' .hin
the same by the United States, or with any regulations, Con-
gress may find necessary for securing the title in said soil to
*bona fide* purchasers thereof; and that no tax shall be im-
posed on lands belonging to the United States, and tha t non-
resident proprietors shall not be taxed higher than resi, dents.
*Section 5. See Comp. Stats. page* 43.

These several propositions were distinctly accepted by the
State upon the terms required by the act, by a clause in the
State Constitution. *Constitution, Article* 2, *Section* 3.

The State therefore cannot interfere with the primary dis-
posal of the soil, nor with any regulations Congress may find
necessary for securing title to *bona fide* purchasers, nor can it
tax the lands of the United States within its borders, and
with these exceptions, such lands are subject to the same con-
trol by the State government as any other lands, over which
its jurisdiction extends.

It will be seen that all these rights reserved by Congress
are in terms restricted in their operation to the period during
which the lands are the property of the United States.
While the lands belong to the United States they may be dis-
posed of by that government to whom it pleases, and the title
may be secured to the purchaser in such manner as it sees fit
to prescribe, but the moment the sale is completed and the title
secured to the purchaser, the land enters into the general mass
of the property of the State, relieved from all control of the
federal government whatever, save such as is incident to the
general relation of the State to the federal Union.

These observations are made with a view to one point
raised by the counsel for the Defendant, that the source
of the Defendant's title being a patent from the United

States it was not subject to impeachment in any tribunal save those of the federal government. If the above position is correct that the land on passing from the United States by grant, and becoming the property of the citizen, loses all its privileged features and stands as any other property within the State, then it follows that the State must have jurisdiction to try and determine conflicting claims to the same, when they arise between citizens of the State, or the State and a citizen as in this case, to the same extent that any other question of title or property may be entertained by its Courts. And it can make no difference in this respect, that both claimants are grantees of the United States. The question is simply one of title to land between parties and concerning a subject matter clearly within the jurisdiction of the State tribunals. The question in this case involves, it is true, the construction of an act of Congress as the source of title on the part of the State, and an examination of the validity of a patent granted by the United States of the same lands to the Defendant, alleged to have been obtained by fraud; but the doctrine is both a novel and alarming one, that the State tribunals have not the power, at least in the first instance to entertain questions arising under acts of the federal government and its officers when involving the rights of its citizens. The only limitations upon the State in regard to the questions cognizable in their Courts are such as they have themselves created by the adoption of the Constitution of the United States, and though they have consented that the federal jurisdiction shall extend to all cases in law and equity arising under that instrument, and the laws and treaties of the United States, it does not follow that they have relinquished jurisdiction over questions involving private rights simply because those rights had their origin in some law of the United States. It is a matter of very frequent occurrence, that the State Courts are called upon to construe the laws and treaties of the United States and acts of authority emanating from that government in matters properly appertaining to their jurisdiction: and the federal judiciary can exercise no control whatever over their decisions on such ques-

tions simply because such law, treaty or authority was called in question in the State Court; but only when the decision of the State Court is *against* the validity of the right, title, or claim set up under the law, treaty or authority of the United States.  *Judiciary act of September* 24, 1789, *Sec.* 25 ;   *U. S. Stats. at Large, Vol.* 1, *p.* 85–6 ; *Williams vs. Norris,* 12 *Wheaton,* 117.  Nor has the federal judiciary any control over such questions when once the State Courts have acquired the same, until the State has finally exhausted its judicial power over them by a final decision in its highest tribunal.  *Houston vs. Moore,* 3 *Wheaton,* 433.

Whether or not the Supreme Court of the United States would have jurisdiction to review the decision we may make in this case is peculiarly for that Court to determine.  It is always quite sufficient for us to be well assured that we possess jurisdiction over the questions that we are called upon to decide, and leave every other Court of superior appellate powers to do the same.  The observations above made with regard to the jurisdiction of the Supreme Court of the United States, and the decisions of that Court cited, are more to show the views entertained by it of our jurisdiction, than to comment upon the extent of it.

Having ascertained that the question of title involved in this case, may be tried in our own Courts, we come to the next question raised by the Defendant, which prefers to the proper form of action in which to assail a patent.  It is contended that it can only be impeached in an action commenced in equity to set it aside.

This doctrine is substantially decided in the Supreme Court of the United States in the case of *Polk's Lessees vs. Wendal,* 9 *Cranch* 87.  That was an action of ejectment, and the Court at *page* 99, after declaring that a Court of equity is the most eligible tribunal to examine such questions, for the reason that in such Courts " the specific points must be brought into view, the various circumstances connected with those points considered, and all the testimony respecting them may be laid before the Court," say by way of qualification to the above rule, that " there are cases in which the grant is abso-
29

lutely void; as where the State has no title to the thing granted, or where the officer had no authority to issue the grant. In such cases, the validity of the grant is necessarily examinable at law."

The same is held in case of *Patterson vs. Winn*, 11 *Wheat.* 380 ; and also in *Boardman vs. Lessees of Reid & Ford*, 6 *Peters*, 328. See also *The People vs. Livingston*, 8 *Barb. S. C. R.* 253 ; *Jackson vs. Marsh*, 6 *Cowan* 281 ; *Jackson vs. Lawton*, 10 *John.* 23. In which latter case Chief Justice Kent after examining the law pretty thoroughly uses the following language, "Unless letters patent are absolutely void on the face of them, or the issuing of them was without authority, or was prohibited by statute, they can only be avoided by a regular course of pleading, in which the fraud, irregularity or mistake, is directly put in issue. The principle has been frequently admitted that the fraud must appear on the face of the patent to render it void in a Court of law ; and that when the fraud, or other defect arises on circumstances *dehors* the grant, the grant is voidable only by suit." *The people vs. Mauran*, 5 *Denio* 389 ; *Jackson vs. Hart*, 12 *John R.* 77.

This principle is certainly well founded in reason, and the cases above cited are of undoubted authority. The reason given for the principle is this ; that patents are high record authority, that they import verity and should not be impeached in any court that does not enjoy a full opportunity to investigate the whole subject upon a regular course of pleading and proof directed expressly to the points of irregularity or fraud complained of.

The form of action adopted by the Plaintiff to test the question at bar, is under the following provision of statute.

" An action may be brought by any person in possession, by himself or his tenant of real property, against any person who claims an estate or interest therein, adverse to him, for the purpose of determining such adverse claim, estate or interest." *Comp. Stat. p.* 595, *Sec.* 1.

The language of this statute is not confined to the determination of any particular character of claim, estate or interest that may be asserted adversely to a party in possession of

land, but comprehends all claims of what nature soever, and authorizes the determination of them in the action so brought under it.

We had occasion to rule upon this statute in the case of *Steele et. al. vs. Fish,* 2 *Minn. R.* 153, where we held that it was the intent of the Legislature in passing that act, that any one who has the actual possession of land, and consequently is *prima facie* the owner of the same, may upon that fact alone, institute an action against any one who casts a cloud upon his title, and compels him to spread his claim upon the record, that it may be adjudicated and forever put at rest." This is undoubtedly the object of the statute, and we think it affords a ready means of trying such questions, giving as it does all the advantages of a " regular course of pleading" similar in all respects to that of a bill and answer in chancery. The complaint shows a *prima facie* right in the Plaintiff, and an adverse claim in the Defendant. The answer exhibits the nature of the Defendant's claim. The reply sets forth all the facts that the Plaintiff relies upon to defeat the claim of the Defendant, and the facts of the reply are all put in issue by the operation of the statute. *Comp. Stat.* 543, *Sec.* 88. None of the reasons therefore, out of which have grown the rule that a patent cannot be assailed collaterally, or in an action of ejectment, apply to an action prosecuted under this statute. It is as much a direct proceeding to set aside the patent, as would be a bill filed for that purpose. The pleadings contain the same facts, and they are adjudicated in the same tribunal. The Plaintiff has selected a form of action fully adequate to test the question he seeks to raise.

The settlement of these preliminary questions, leads us to the merits of the controversy. The Plaintiff claims title to the land in question under the *act of Congress, February* 26, 1857, *Comp. Stat. p.* 12, which by *Section* 5 grants to the State for the use of schools, Sections numbered sixteen and thirty-six in every township, except such parts thereof as had been previously sold. This grant became absolute upon its acceptance by the Convention and the subsequent adoption of the State Constitution by the people on the thirteenth day

of October, 1857, and did the question rest upon the statute alone, it would have passed to the State all the lands embraced in such Sections sixteen and thirty-six that the United States was the owner of on the twenty sixth day of February, 1857, the day of the passage of the act. *Grignon's Lessees vs. Astor*, 2 *Howard, U. S. R.* 319 ; *U. S. vs. Brooks*, 10 *do* 442.

The act however was qualified by a joint resolution of Congress passed March third, 1857, which authorized parties who had settled upon school lands previous to their having been surveyed, to pre-empt the same, on bringing themselves within the requirements of the pre-emption act in all other respects. The State therefore took the grant of these school sections encumbered by the claims of such parties as had made settlement upon them prior to the survey and could bring themselves within the resolution and the pre-emption act.

The Defendant claims that his assignor made his settlement before the surveys, pre-empted the land and received his patent therefor from the government of the United States. The Plaintiff in his reply, alleges that the pre-emption was made by fraud, that the assignor of the Defendant did not in fact make any settlement 'upon the land before the survey, and that he procured a witness to swear falsely to the necessary facts before the land officers, to obtain from them a certificate of pre-emption, &c. The pleadings are full in their allegations, the above is merely a compendium of their contents. The reply is demurred to for insufficiency, and the Defendant had judgment on the Demurrer in the Court below.

In all the various aspects in which the case is presented by the Plaintiff, I can see but one real question which lies at the root of them all, and that is whether the decision of the Land Officers upon the facts of settlement prior to the surveys, is so absolutely conclusive as to cut off any subsequent inquiry concerning the same. The Defendant insists that upon the finding of such fact by the Land Officer, the question of settlement becomes *res judicata* as fully and finally as if a jury had so found in a former suit between these parties where that question had been necessarily involved.

The Plaintiff urges four grounds upon which he may question the patent of the Defendant.

1. When the officers act without the pale of their authority.

2. When the patent is obtained by the fraud and perjury of the patentee.

3. When the action is brought by a grantee seeking to establish his priority of title and thereby to show that the common grantor had no title to convey to the Defendant.

4. When the object of the evidence is to define and fix the limits of the grant and thereby show that it covers land claimed by the adverse party.

I cannot see that the nature of the question is at all changed by the different forms in which the Plaintiff puts it. The officers cannot be said to have acted without the pale of their authority in hearing the case of the pre-emptor, and if they were imposed upon by fraudulent suggestions, and perjured evidence, then it is a question of fraud, and not of excess of authority, or want of jurisdiction. If the Plaintiff desires to show that the United States had parted with its title by the act of February 26th, 1857, and thus claim a prior title to that of the patentee, it can only do so, by showing that the latter had not in fact made the settlement prior to the survey; because upon that fact depends the priority of the Plaintiff's title, and this at once brings up the question of the conclusiveness of the decision of the Land Officers ; and the same reasoning applies to the fourth ground of the Plaintiff. The limit of the grant to the Plaintiff, can only be fixed and defined, so as to exclude the patentee, by showing his settlement not to have been made prior to the survey. So the whole question necessarily resolves itself into the fraud of the patentee, in proving this fact before the Land Officers, and whether that can be shown to impeach the patent ; and in this light we will examine it.

This Court has had the question of the powers of the United States Land Officers and the effect of their decisions under consideration to some extent, in the case of *Leech vs. Rauch*, 3 *Minn. R* 448. It was our opinion then, that in all matters which by law are confided to their examination and decision, they act judicially, and their decisions are as final as those of

other Courts. *See* 1 *Scam.* 353; *Id.* 156; 2 *Gill.* 598; 14 *Ill.* 347; 16 *Idem*, 555; 18 *How.* 87; *Idem* 173. This posi-- tion is not controverted by the Plaintiff, and cannot be successfully. I will for the purpose of this investigation treat the patent sought to be impeached as issuing by virtue of a judicial determination of the Land Officers and consequently ranking with a judgment in point of verity.

I have made very diligent search through the English and American authorities at my command, to see to what extent Courts of equity have granted relief against patents and judgments obtained by fraud. I find the rule generally stated that relief may always be had in such cases. Thus Justice McLean, delivering the opinion of the Supreme Court of the United States, in the case of *Stoddard vs. Chambers*, 2 *How R.*, *at page* 318, says: "It is true a patent possesses the highest verity. It cannot be contradicted or explained by parol; but if it has been fraudulently obtained or issued against law, it is void. It would be a very dangerous principle to hold that a patent should carry the legal title, though obtained fraudulently, or against law. Fraud vitiates all transactions. It makes void a judgment which is a much more solemn act than the issuing of a patent." *See also Polk's Lessees v. Wendal*, 9 *Cranch* 98; 12 *John*, 77; 10 *John*, 23. It is useless to multiply authorities; the same general doctrine is held through them all; yet I regret to say that I have been able to find but one arising upon a pre-emption case, and there the entry was set aside because it was allowed upon lands clearly not within the jurisdiction of the officers, and not for fraud, *Wilcox v. Jackson*, 13 *Peters* 498.

In regard to granting relief against judgments and decrees of Courts, it is stated in *Maddock's Chancery Vol.* 1, *p.* 300, "If a verdict has been obtained by fraud, a Court of equity will give relief."

"So if a judgment at law be obtained against conscience a Court of equity will decree the party to acknowledge satisfaction on that judgment though he has received nothing."

"A decree obtained by fraud may be set aside, not by a rehearing, or appeal, but upon an original bill, in the nature of a Bill of Review. An order in Lunacy may be set aside by

Bill, if obtained by fraud." In support of this doctrine he cites *Barnesly v. Powell*, 1 *Ves. Sen.* 289 ; *Richmond vs. Taylor*, 1 *Perre Wms.* 734 ; *Loyd vs. Mansell*, 2 *Perre Wms.* 73; *Sheldon vs. Fortescue*, 3 *Perre Wms.* 111. *See also* 1 *Strange* 666, *Marriot vs. Marriot*.

The case in 1 *Ves. Sen.*, was the probate of a will in the exchequer which was afterwards found to be a forgery. Lord Chancellor Hardwicke decreed that no use should be made of the will, and the Defendant should consent to a revocation of the probate. He held that a Court of equity may decree satisfaction to be acknowledged of a judgment obtained against conscience, and that a person obtaining a fine by fraud may be decreed a trustee.

In the case in 1 *P. Wms.*, a bill was filed to set aside a decree obtained. The Chancellor said that "if fraud or surprise upon the Court had been proved, he would have set aside the decree," This, however. was a decree against an infant.

The case in 2 *P. Wms.*, was a bill to set aside an absolute decree, signed and enrolled, alleging fraud in the same, in the manner of obtaining service by making a false affidavit that the Defendant was gone beyond sea, &c. The Defendant pleaded the decree in bar. The Lord Chancellor says : "All these circumstances of fraud ought to be answered, which the Defendant has been so far from doing, that he only pleads that decree and report as a bar which the Plaintiff seeks to set aside ; and the decree being signed and enrolled, the Plaintiff has no other remedy ; and if these matters of fraud laid in the bill are true, it is most reasonable that the decree should be set aside."

It was objected that according to this rule a decree might be set aside by an original bill.

His Lordship replied "such a gross fraud as this was an abuse on the Court and sufficient to set aside any decree."

The case in 3 *P. Wms.*, was as follows : The committee of a lunatic obtained an order that the profits of the lunatic's estate should be applied to his maintenance without stating a definite sum. The committee and lunatic both died. The administrator of the lunatic filed a bill against the administrator of the committee, for an account. The order is pleaded in

bar. The Chancellor after discussing the whole case, concludes his opinion : "I admit even a decree, much m ore an interlocutory order, if gained by collusion may be set aside on a petition ; *a fortiori* may the same be set aside by bill."

The case in *Strange* merely holds that after the probate of a will, a Court of equity may enquire into the fairness of a residuary devise of personal estate.

In *Adams Equity* 419 it is said a bill to impeach a decree for fraud used in obtaining it, sufficiently explained its own character. It may be filed without leave of the Court because the alleged fraud is the principal point in issue, and must be established by proof before the propriety of the decree can be investigated ; and where a decree has been so obtained the Court will restore the parties to their former situation, whatever their rights may be." See also *Story's Eq. Jur. Vol.* 1, *Sec.* 252 ; *Regal vs. Wood,* 1 *Johns Ch. R.* 403, where Chancellor Kent cites with approbation *Barnsley vs. Powell,* 1 *Ves. Sen.* 284 *and* 289.

From my investigation of this question, I have no doubt that a judgment or decree of a Court, or a patent issuing in virtue of a decision of the Land Officers, even where the Courts and officers act clearly within the sphere of their several jurisdictions, may be impeached in equity for fraud or collusion in obtaining it. Yet it has caused me much embarrassment to decide whether the reception of false evidence upon the merits of the case, in which the decree is sought to be set aside, is such fraud as will be relieved against. As a general rule in judgments and decrees rendered by Courts governed by the common law, or systems of practice founded upon it, I have no hesitation in saying that it would not. Such Courts, and the parties litigating in them have ample means to protect themselves against the imposition of false testimony. The right of cross-examination and impeachment, has always been deemed a sufficient safeguard in this respect. New trials even will not be granted simply on the ground of false evidence having been admitted.

The nearest approach to granting relief against a judgment because it was founded upon false testimony upon the merits, that I have been able to find, is the case in 1 *Ves. Sen.* 284,

above cited, where a will was proven, and the probate decree subsequently set aside on a bill alleging the will to be a forgery.   But that case has special features which destroy it as an authority on the point I am  considering.   The method of obtaining the probate in that case, was to get from the next of kin, by fraud, an agreement that he should do all acts demanded of him, and then obtaining under the agreement a special  proxy  confessing  the  allegations,  upon  which  was founded the sentence of probate.   The Court of Equity operated first upon the fraudulent agreements, and  through  them upon the decree of probate and finally upon the will.

The Land Officers in the case at bar, were authorized to hear and determine the question as to whether the pre-emptor had settled upon the lands prior to  the  survey.   This proof was as much a part of the pre-emptor's case, as the subsequent proof necessary to bring him within  the act of 1841,  because without the one he could not go into the other.   The counsel for the State endeavors to make a distinction between the preliminary fact of settlement before the survey, and the regular facts under the pre-emption act, on the ground that it is by virtue of the prior settlement that the Land Officers have jurisdiction over the school sections at all, and that in  deciding facts upon which to found  their  jurisdiction,  their  decision should not be as final, as where the decision is in a  matter where the jurisdiction is defined by law ;  but it is difficult to sustain this distinction upon principle.   In either case the facts may be contested, and must be  judicially  determined, placing the decision upon the same footing in each.

But how does the State stand upon the pleadings in this case ?   It does not follow that because a court of equity can set aside a judgment obtained by fraud, that it will do so upon the suggestion of the fraud alone.   I apprehend that in an application to equity, of this character as well as in  any  other, it must be made to appear that the Plaintiff has no  remedy at law adequate to his protection.   How is it here ?   It does not appear that the State was not a party to the proceedings in the Land Office, although the counsel on both sides argue the case upon the supposition (which was probably true) that the State had no notice and  was  not  heard ; nor

30

does it appear that the State was left in ignorance of the proceedings in the Land Office until too late to make application to that tribunal for redress ; both of which facts were essential to the Plaintiff's bill, or as in this case, his reply.  If the Plaintiff had notice and contested, or had an opportunity to contest and did not take advantage of it, the admission of false testimony would not be sufficient ground for relief, because as before shown, the privileges of cross-examination and impeachment are ample protection against such practices.   If the Plaintiff was aware of the decision of the Land Office at any time during the pendency of the matter therein, an application to any of the Land Officers in whose department the case might have been, setting forth the facts, would have procured a re-hearing and a detection of the fraud.  If the Plaintiff knew of the decision against its interest and allowed the time to elapse in which it could have obtained relief in the same Court, without appealing to that tribunal, I think its negligence is a good answer to an action of this nature. There can be very little doubt that if the case was still pending in the Land Office, this Court would turn the Plaintiff over to that tribunal for relief, because it would have ample power to grant it.   It is only when the Plaintiff without any default of his own is placed in a position that the law Courts cannot afford him adequate redress, that this Court will interfere, and for the purpose of this investigation we must place the Land department of the United States in the category of law courts.

Fully appreciating the difficulties surrounding a correct decision of the several questions presented, I have endeavored to so qualify my reasoning, as to avoid trenching upon any settled principle of the law, or experimenting in new or doubtful ones, and also to confine the decision to the particular facts presented by the pleadings, and being of the opinion that the reply is defective in the particulars suggested, a Court of equity should not take cognizance of the case.

The Demurrer was well sustained and the judgment is affirmed.